[Cite as *State v. Cunningham*, 2024-Ohio-1739.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

CASEY A. CUNNINGHAM,

      Defendant-Appellant.

CASE NO. 2023-P-0084

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2023 CR 00536

## O P I N I O N

Decided: May 6, 2024
Judgment: Affirmed

*Victor V. Vigluicci,* Portage County Prosecutor, *Kristina K. Reilly,* Assistant Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Donald K. Pond, Jr.*, 567 East Turkeyfoot Lake Road, Suite 107, Akron, OH 44319 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1}    Appellant, Casey Cunningham, appeals from his conviction for Violating a Protection Order, a fifth-degree felony in violation of R.C. 2919.27. Appellant raises one assignment of error, arguing the trial court abused its discretion by failing to sua sponte conduct an inquiry to determine whether appellant was competent to stand trial after what appellate counsel describes as appellant's "tangential, disjointed, paranoid, erratic, and manic" trial testimony.

{¶2} Having reviewed the record and the applicable caselaw, we find appellant's assignment of error is without merit. The transcripts of the trial and sentencing hearing demonstrate that appellant consistently engaged with the trial court and with his attorneys cogently and appropriately. Although appellant's testimony was peculiar and aptly described as "paranoid" at times, even an emotionally disturbed individual can be capable of understanding the nature of the charges against him and assisting in his own defense. Appellant's trial counsel and the trial court were in the best position to observe him and raise this issue below. A competency question is one that is often difficult to address and one with no definite signs which would "invariably indicate the need for further inquiry." *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

{¶3} Appellant's interactions available to us in the record tend to demonstrate that appellant had the present ability to understand the nature and objective of the proceedings and to assist in his own defense. The record does not support finding that the trial court abused its discretion in failing to sua sponte address appellant's competency to stand trial.

{¶4} Therefore, we affirm the judgment of the Portage County Court of Common Pleas.

**Substantive and Procedural History**

{¶5} On May 18, 2023, appellant was charged with two counts of Violating a Protection Order, fifth-degree felonies in violation of R.C. 2919.27.

{¶6} On June 5, 2023, appellant entered a plea of not guilty and the matter was set for trial.

2

Case No. 2023-P-0084

{¶7} Jury trial commenced on July 25, 2023. At trial, appellant was represented by two court appointed attorneys. The State moved to dismiss Count 2 and to proceed to trial only on Count 1. In addition, the parties stipulated that appellant had been served with a valid protection order that was in effect on the date of the offense. The protection order was also entered into evidence as an exhibit.

{¶8} Alexis Culbert testified that she and appellant were in a relationship between August 30, 2020 to January 30, 2022. Culbert decided to end the relationship and moved out. She said appellant continued to contact her and she felt threatened, so she obtained a protection order. Culbert said that there was a prior incident where appellant contacted her, and he was convicted for Violating a Protection Order. The initial protection order expired, and Culbert obtained another protection order active from March 27, 2023, until February 22, 2028.

{¶9} On April 20, Culbert attended a local music festival in Portage County. She said the festival included a campsite, where she stayed with her boyfriend, Jonathan Cousins, her sister, and some friends.

{¶10} Culbert said that after nightfall, she and Cousins were looking for a friend at the festival. While they were doing this, appellant tapped Culbert on the shoulder and said, "Hello, friend." Culbert said she panicked and grabbed Cousins, pulled him away, and told him that appellant had approached her.

{¶11} Jonathan Cousins testified that he had never met appellant but said that he knew about Culbert's relationship with him and the protection order. He said he was with Culbert and saw a man come up to her and tap her on the shoulder. He then said Culbert grabbed him with "fear in her eyes" and said that appellant "just came up to me."

3

{¶12} After appellant approached Culbert, Culbert and Cousins talked to the festival security staff about the incident.

{¶13} Steven Liller worked as security at the music festival. He said when security approached appellant to ask him to leave the festival, appellant became belligerent and said the protection order was Culbert's problem and that they should "make her leave." Liller said appellant began to go on a tirade, but the festival promoter felt it would be better not to further aggravate appellant or cause a physical altercation, so security left him alone for the time being.

{¶14} Leah Morosky testified she was dating appellant at the time of the festival. She said the two attended the festival together. She said she was aware that Culbert had a protection order against appellant and that Culbert might also be at the festival. Once at the festival, she said the festival facilitator approached them and said appellant could not attend because of the protection order. However, after saying they would keep to themselves, the facilitator agreed to let them attend.

{¶15} She said she and appellant were listening to a performance and saw a woman she recognized from a photo to be Culbert "quite a little ways away from us." She said that appellant got up from the table they were at, walked "straight towards" Culbert, and spoke to her. Morosky said appellant was "bee-lining it for her."

{¶16} On April 22, 2023, security again encountered appellant at the festival and, along with Portage County Sheriff's Deputies, removed appellant from the festival grounds.

{¶17} After the State rested its case, the Court reminded appellant of his constitutional right to not testify and the trial court asked if appellant "had sufficient time

4

to talk to your lawyers about this?" Appellant said that he felt "rushed" and discussed his concerns on the record. Appellant asked to defer the decision to testify until the next day. Appellant's trial counsel similarly asked to allow appellant to have an opportunity to think about testifying until the morning, and the trial court agreed.

{¶18} The next morning, appellant informed the trial court that he wanted to testify and advised the court that he wanted to fire Attorney Ellis, one of his two trial attorneys. The trial court did not entertain firing counsel mid-trial, in part because appellant's counsel had already prepared for trial under the assumption of going to trial with co-counsel participation. Appellant responded "I carry a concern of a predisposition of personal – what's the word I'm looking for? [Attorney Elliss is] not quite a fan of my character and demeanor and my delivery."

{¶19} After this exchange, the State maintained that because appellant was going to take the stand, that appellant's prior history was subject to questioning. Appellant interjected that this information was "[i]rrelvant to the allegations." The court instructed appellant that it was not his "turn to talk" and trial counsel argued on appellant's behalf that appellant's prior convictions were "irrelevant to the charge in question today."

{¶20} Appellant then testified on his own behalf. On direct examination he said that he attended the music festival on April 20, 2023, and camped there for several days. He acknowledged the existence of the protection order in effect and that he could not be near Culbert. Appellant denied that he made contact with Culbert at the music festival.

{¶21} He acknowledged he has several prior convictions. Appellant also stated that he had been sober for three years, has his own business, has purchased a house, and plays in multiple bands.

5

{¶22} On cross-examination, the State began by seeking points of agreement with appellant, but, while appellant agreed he had been in a relationship with Culbert, he denied that she was the one who ended the relationship. He also said that he believed she obtained the protection order against him because she was pregnant with his child, and said an individual was drugging him and Culbert and putting them on Only Fans to make money off of them.

{¶23} When asked about his prior conviction for Violating a Protection Order, he said that he had been in Wheeling, West Virginia and that a gang had been stalking and drugging him and he was concerned that Culbert was a victim as well. He said he happened to see Culbert and told her that people were trying to kill him and warned her to "Look out, this, that and the other." He said this was merely a "chance encounter."

{¶24} Appellant recounted several other convictions and charges, explaining the resolution of each. Finally, he said that he was assaulted by officers in the Portage County jail. He said that he believed the assault was part of the "collusion and conspiracy." He said that he "tried to speak with [Attorney] Ellis and this is where I wanted to fire him previously before this."

{¶25} Appellant also said that he had been drugged during the court hearing for the protection order and said the hearing was "some type of weird situation." He believed that he was drugged because there is a "domestic terrorist and search that's going on through – it's infiltrated through Black Panthers, through Black Lives Matters, Eligibly GTQ [transcript sic]." Appellant asserted the purpose of these actions was to create "situations" whereby people would be incarcerated and lose credibility, functioning as a sort of "social justice" "subtle Civil War."

6

{¶26} Appellant also maintained that he never dated Morosky, stating that he was drugged by her as part of a "COVID experiment." He also suggested that Morosky is a satanist and part of a "vampiric set of a satanic-magic ritual cult" who targeted him because of his religious beliefs.

{¶27} When asked to identify the protection order, the State handed appellant the exhibit, he correctly identified it, and discussed the various provisions contained within it.

{¶28} However, appellant denied violating the protection order on April 20, 2023, at the music festival. He said Culbert lied during her testimony or that what she said was "a false memory or false witness or a false testimony or who knows. Who knows. The human consciousness and mind and brain is the greatest wonder on earth. It could have been a dream, who knows."

{¶29} The State asked appellant how other witnesses could have all seen the same event happen. Appellant suggested that Cousins misidentified him at the festival due to intoxication. The State asked whether Culbert and Cousins could have both had the same dream that appellant contacted Culbert. Appellant said "I'm not saying that at all. That's an interesting philosophy that I'd love to divulge into." Appellant merely maintained that Cousin's had never met him before and must have mistaken someone else for him.

{¶30} Appellant also (correctly) offered that each of the witnesses had slightly incongruent stories, with different dates and times that did not match up and noted that each of them made statements to the police several days, if not weeks, after his arrest.

{¶31} Appellant denied ever having seen or spoken to Liller. He theorized Liller, as the head of the festival security, had been paid off by the festival promoter who was

7

targeting him because appellant is an "up and coming" talented musician. He also suggested that festival security had "drugged everybody at this festival in a matter of sense." He also said Liller appeared intoxicated during his testimony.

{¶32} He said he believed Morosky had lied in her testimony and said she may have been intoxicated and misremembering what happened.

{¶33} The jury found appellant guilty of Violating a Protection Order.

{¶34} On October 10, 2023, the trial court held a sentencing hearing. At the hearing, appellant addressed the court. Appellant referenced a separate case in which he had been acquitted and discussed his inability to bond out. He said that he had a daughter on the way and that it was important to be present during the pregnancy. He said he did not deserve to be incarcerated because he was non-violent and would not contact the victim further because he had a new girlfriend in his life and he would no longer be residing in northeast Ohio.

{¶35} He argued that he should have fought the underlying restraining order and prior Violating a Protection Order conviction. He said he had tried to warn Culbert that people were trying to hurt them and the whole situation was a "miscommunication." He also continued to deny the present charge and said that his interaction with Culbert at the music festival "did not happen."

{¶36} The trial court imposed 10-months' incarceration and waived any fine or court costs. The court also imposed a two-year term of post-release control.

{¶37} When the trial court informed appellant that it would not oppose transitional control, appellant asked: "Can I have clarification on what transitional control is?" The trial court explained that it is a program in the institution that will assist in integrating back into

8

society. Appellant asked: "What does that look like?" The trial court said that it could not provide further information because the court is not in control of the specific details, but said it would be explained further. Appellant asked what his "out date" would be and the court said it needed to calculate the date and would specify the date in the judgment entry of sentence.

{¶38} On October 19, 2023, the trial court entered its judgment entry of sentence. Appellant received 131 days of jail time credit. [1]

{¶39} Appellant timely appealed raising one assignment of error.

### Assignment of Error and Analysis

{¶40} Appellant's sole assignment of error states:

{¶41} "[1.] The trial court erred by failing to conduct an inquiry into the competency of Defendant-Appellant Casey Cunningham during the course of the trial proceedings, contrary to due process and the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

{¶42} Appellant argues the trial court abused its discretion by failing to sua sponte conduct a competency inquiry with appellant due to his unusual trial testimony. He highlights the "surreal trial testimony" which he characterized as "tangential, disjointed, paranoid, erratic, and manic." Appellant therefore argues the trial court abused its

---

1. Although appellant's term of incarceration concluded prior to the resolution of this appeal, appellant has challenged his underlying conviction. Therefore, this appeal is not rendered moot by the completion of his sentence. *See State v. Biscardi*, 11th Dist. Portage No. 2019-P-0003, 2019-Ohio-4653, ¶ 13 ("Thus, when the prison sentence has already been served and the underlying conviction is not at issue, an assertion that the trial court erred in determining the length of that sentence is a moot issue because no relief can be granted.").

9

Case No. 2023-P-0084

discretion by failing to sua sponte raise the issue of his competency, and that this failure violated his Due Process rights as he was not competent to stand trial.

**{¶43}** "A defendant is rebuttably presumed to be competent to stand trial." *State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d 1216, ¶ 48. A defendant is incompetent if he "is incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense." R.C. 2945.37(G). When raised before trial, the trial court must hold a competency hearing. R.C. 2945.37(B). When raised after the start of trial, the trial court shall hold a competency hearing "only for good cause shown or on the court's own motion." *Id.*

**{¶44}** In this case, appellant's trial counsel did not raise this issue, therefore, we analyze whether the trial court, on its own motion, should have held a hearing on appellant's competency to stand trial.

**{¶45}** The Due Process protections of the Ohio and U.S. Constitutions "requires a court to hold a hearing when it has been presented with a 'sufficient indicia of incompetence.'" *Lawson* at ¶ 51, quoting *Drope v. Missouri*, 420 U.S. 162, 175, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Fifth and Fourteenth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 16.

**{¶46}** "The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." *State v. Berry,* 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995), quoting *Drope* at 162. "'*There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the*

10

*question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.* That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.'" (Emphasis added.) *Lawson* at ¶ 70, quoting *Drope* at 180.

{¶47} The "decision as to whether to hold a competency hearing once trial has commenced is in the court's discretion." *State v. Rahman*, 23 Ohio St.3d 146, 156, 492 N.E.2d 401 (1986); *State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 56. Abuse of discretion is a term of art. It connotes a court's exercise of judgment that neither comports with reason nor the record. *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 [148 N.E. 362] (1925). Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.,* quoting *Beechler* at ¶ 67. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

Case No. 2023-P-0084

{¶48} A trial court does not have a duty to question a defendant's competence where: nobody "on the spot" raised any question as to the defendant's competence, (*State v. Cowans*, 87 Ohio St.3d 68, 84, 717 N.E.2d 298 (1999)), or where there is no evidence of "outrageous" or "irrational" conduct during trial, or where there is no complaint about the defendant's lack of cooperation in his defense. *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 63.

{¶49} On review, such "[f]actual determinations are best left to those who see and hear what goes on in the courtroom." *Cowans* at 84.

{¶50} Further, mental illness is not synonymous with legal incompetency. *Berry,* 72 Ohio St.3d 354, 650 N.E.2d 433, syllabus. "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

{¶51} Ordinarily, any error by a trial court in not conducting a mandatory hearing under R.C. 2945.37 is harmless if the record fails to reveal sufficient indicia of incompetency. *Bock* at 110.

{¶52} However, here, unlike in *Bock*, appellant's trial counsel did not request a competency hearing. Therefore, appellant has waived all but plain error on review. *In re Grimes*, 147 Ohio App.3d 192, 769 N.E.2d 420 (2002), ¶ 13; *State v. Ford*, 8th Dist. Cuyahoga No. 84138, 2004-Ohio-5610, ¶ 23. "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial

12

court." *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. The appellant bears the burden of demonstrating plain error by proving that the outcome would have been different absent the plain error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 17. The plain error must be a deviation from a legal rule and an obvious defect in the proceedings. *Rogers* at ¶ 22. Because an incompetent defendant is not subject to conviction, a court's decision regarding the competency of an individual to stand trial will always be outcome-determinative in the most fundamental sense." *In re Williams,* 116 Ohio App.3d 237, 241, 687 N.E.2d 507 (2d Dist.1997).

{¶53} We readily acknowledge appellant's testimony was peculiar, demonstrated signs of conspiratorial thinking, paranoia, and detachment from reality. Nevertheless, a reviewing court does not have the benefit of having interacted with appellant in person or observing him during the trial. We are not in the best position to determine whether appellant's outlandish testimony was the result of genuine lack of competency or whether his claims of vast conspiracies during his testimony was a calculated gambit to influence the jury in his favor. *See Cowans*, 87 Ohio St.3d at 84, 717 N.E.2d 298.

{¶54} For example, appellant said the reason he wanted to fire Attorney Ellis was because he tried to speak to him about his trial testimony and Attorney Ellis was "not quite a fan of my character and demeanor and my delivery." Further, it is significant that neither of appellant's trial attorneys raised the issue of appellant's competence to stand trial despite trial counsels' much closer interaction with appellant including holding privileged conversations with him. Appellant's desire to fire Attorney Ellis for not being a "fan of his character," and trial counsels' decision not to raise competence at trial strongly suggests

13

the trial court did not abuse its discretion by failing to sua sponte inquire into appellant's competency.

**{¶55}** Further, despite the peculiar nature of his testimony, appellant appeared to be able to assist in his own defense and to understand the nature of the charges against him. The transcripts of the trial and sentencing hearing demonstrate that appellant consistently engaged with the trial court and with his attorney's cogently and appropriately, particularly outside the presence of the jury. Appellant asked clarifying questions, discussed his options with regard to testifying, and asked for more time to weigh his decision. Although he inappropriately addressed the court about a legal question pertaining to his prior convictions, appellant's statement was essentially a sound argument. These interactions tend to demonstrate that appellant had the present ability to understand the nature and objective of the proceedings assist in his own defense.

**{¶56}** Peculiar, raving, even fantastic testimony could indicate many things, but the question here is whether the trial court abused its discretion by failing to order a R.C. 2945.32(B) hearing on appellant's competency, i.e. his ability to understand the nature of the charges against him and assist in his own defense. *See Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986). Critically, appellant has not identified how his testimony, however strange, demonstrated sufficient indicia of incompetence to justify the trial court sua sponte ordering a competency hearing after trial had begun pursuant to R.C. 2945.37. *See Drope*, 420 U.S. at 175. There are no definite signs that "invariably indicate the need for further inquiry." *Id.* at 180. Appellant's trial counsel and the trial court were in the best position to observe him and raise this issue below (or not to).

14

{¶57} Appellant's interactions available to us in the record tend to demonstrate that appellant had the present ability to understand the nature and objective of the proceedings and to assist in his own defense. The record does not support finding that the trial court abused its discretion in failing to sua sponte address appellant's competence to stand trial.

{¶58} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

15