[Cite as *State v. Hall*, 2025-Ohio-1308.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SAMUEL V. HALL II,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 JE 0016**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 2023 CR 13

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor, for Plaintiff-Appellee and

*Atty. Martin E. Yavorcik*, for Defendant-Appellant.

Dated: April 8, 2025

**HANNI, J.**

{¶1} Defendant-Appellant, Samuel V. Hall II, appeals from a Jefferson County Court of Common Pleas judgment convicting him of 21 counts of disrupting public services. The court sentenced Appellant to a total of 4.5 years in prison.

{¶2} Appellant contends on appeal that his trial counsel was ineffective for failing to raise Appellant's incompetency before trial and for failing to enter a not guilty by reason of insanity defense (NGRI). He submits that the 7,347 vulgar, threatening, profanity-laced, and racially-charged phone calls he made to the Steubenville Police Department (SPD) within two months should have alerted his counsel to issues regarding his incompetence and a NGRI defense.

{¶3} For the following reasons, we hold that Appellant did not receive the ineffective assistance of counsel because no indicia of incompetence existed to alert counsel for the need of a competency evaluation or sanity issues to alert him to the need for a NGRI defense. Accordingly, counsel did not deficiently perform by failing to request a competency or sanity evaluation.

## FACTS AND PROCEDURAL HISTORY

{¶4} On February 1, 2023, the Jefferson County Grand Jury indicted Appellant on 21 counts of disrupting public services, fourth-degree felonies in violation of R.C. 2909.04(B) and (C). Appellant opted for a bench trial, where the State presented eight witnesses.

{¶5} Patrolman Mason Gambos with the SPD testified that on November 10, 2023, he was dispatched to a Buena Vista Boulevard address to deliver a message to Appellant from an agency in Massachusetts who had contacted the SPD. (Trial Tr., 34-35). He drove to the address and spoke to a woman in the front yard of the house. (Trial Tr., 35-36). He asked if she knew Appellant and if he resided there. She stated that Appellant was her fiancée's father and he did not live there. (Trial Tr., 36).

{¶6} Patrolman Gambos told the woman he was trying to contact Appellant to notify him that the Massachusetts agency requested that he stop contacting them unless an emergency or police matter existed. (Trial Tr., 36).

{¶7} Sergeant Ryan Lulla of the SPD testified that the day after Patrolman Gambos visited the Buena Vista address, he began receiving repeated calls from the same person on police emergency lines. (Trial Tr., 43). Audio recordings of the phone calls were played for the court. Sergeant Lulla testified that he told the caller he was tying up emergency lines. (Trial Tr., 47). He stated that the caller referenced the police visit to the Buena Vista Boulevard address and calls to Massachusetts. (Trial Tr., 50). He later stated that his name was "Sam." (Trial Tr., 50). Sergeant Lulla testified that he checked SPD records system for the name "Sam" with the address, and the system showed that Appellant was associated with that address. (Trial Tr., 69-70).

{¶8} SPD Dispatcher Jackie Hines testified that in November 2023, she received repeated telephone calls on all police lines at the police station from someone who identified himself as "Sam." (Trial Tr., 81-88). She noted that Appellant would call and play music or he would call other agencies with her on the line and she could hear him talking to them while on the line with her. (Trial Tr., 89). She stated that "Sam" also told her that he was coming with "signs and guns" to her location and would come to her house. (Trial Tr., 89, 90). The telephone recordings were played for the court.

{¶9} Ms. Hines testified to repeated phone calls where she would hang up on Appellant and he would call back and say, "Answer the phone, nigger," every time she answered. (Trial Tr., 92). She related that he also called her a "slave," "cunt," "raging cunt," "nigger," "cracker," and "sugar tits." (Trial Tr. 93). He threatened to come to her house, related that he was waiting outside for her, and stated that he hoped her mother and daughters would be "raped by black men with giant cocks." (Trial Tr., 94). She testified that the phone calls interrupted her ability to perform her job because she was listening more to the phones constantly ringing than the radio reports and requests from police officers transmitting from patrol. (Trial Tr., 94-95).

{¶10} Ms. Hines further testified that a road officer would sometimes have to return to the station to handle phone calls while she engaged with Appellant and his repeated phone calls. (Trial Tr., 102-103). She testified that he would call 800-1,000

times per day. (Trial Tr., 105). He informed her that it was his "right to protest." (Trial Tr., 105). She noted that during one shift, Appellant called 700 times. (Trial Tr., 106).

{¶11} Ms. Hines further testified about her November 16, 2022 notation that Appellant called for two hours straight and throughout the night. (Trial Tr., 138). She related that Appellant stated that he wanted "them" to "bring the violence" and he would come stand outside of her house with a gun. (Trial Tr., 138). She testified to her November 19, 2022 note that Appellant began calling at 8:40 a.m. and called at least 80 times during the next hour. (Trial Tr., 139). She stated that Appellant said he was going to "meet us with violence." (Trial Tr., 139). She also noted a time when Appellant said "'we're gonna send the next motherfucker to his death' and he was going to fuck us up either in federal court or with blood in the streets." (Trial Tr., 139).

{¶12} SPD Dispatcher Joe Mastriani testified that he began receiving telephone calls from Appellant during his midnight shift on November 12, 2022. (Trial Tr., 147). The recording of that call and others were played for the court. (Trial Tr., 147-149). He related that the calls interfered with his ability to perform his job because Appellant called on every line and tied up lines for legitimate callers. (Trial Tr., 149). He testified that it pulled him away from responding to officers who were calling in from the road on traffic stops or serious calls, such as domestic violence calls. (Trial Tr., 149). He recalled receiving "shots fired" calls from citizens on December 31, 2022 and that Appellant's repeated phone calls hampered his ability to aid officers in the field investigating those complaints. (Trial Tr., 163-166).

{¶13} Karen Chociej has been a SPD dispatcher for 25 years. (Trial Tr., 186). She related that even when Appellant called and was silent on the phone, she and the other dispatchers were required to remain on the call to ensure no emergency was occurring. (Trial Tr., 193). She testified that the phone calls interfered with her ability to perform her job. (Trial Tr., 193). Those phone calls were played to the court.

{¶14} SPD Dispatcher John Hanselman testified that he began receiving telephone calls from Appellant during his shift on December 30, 2022. (Trial Tr., 220). He related that the phones constantly rung and it was hard to respond to police officers in the field because the constant ringing prevented him from hearing them or their

requests for license plate numbers. (Trial Tr., 221). He estimated receiving 750 calls from Appellant on December 30, 2022. (Trial Tr., 221-223).

{¶15} Mr. Hanselman also recalled Appellant calling the police station collect from jail in South Carolina. (Trial Tr., 225). He did not accept the call after being informed that it was Appellant. (Trial Tr., 225).

{¶16} Joe Buchmelter testified that he is the operations captain at the SPD. (Trial Tr., 236). He related that Appellant's repeated phone calls interfered with police operations because he would have to bring in police officers from the field to answer Appellant's phone calls so that the dispatchers could answer legitimate phone calls from citizens and communicate with other officers in the field. (Trial Tr., 237-238). He made a report of this interference on January 2, 2023. (Trial Tr., 238). He noted that Dispatcher Chociej had difficulty absorbing the volume and content of Appellant's calls while she was working and he had to remove her and put someone else in her role because she was visibly upset. (Trial Tr., 240-241).

{¶17} The State also called Jacob Mannarino, a detective for the SPD. (Trial Tr., 247-248). He testified that he ran Appellant's name through a database and the Buena Vista Boulevard address came up as associated with him. (Trial Tr., 249). He testified that he received information about Appellant's cell phone and was able to connect it to Appellant. (Trial Tr., 251). He applied for a search warrant for the phone and was able to identify all of the phones and phone numbers that Appellant used. (Trial Tr., 251-252). He reviewed all phone calls made by each device and identified the number of calls for each date given to him by the prosecution. (Trial Tr., 259-263).

{¶18} He testified that he listened to all 7,347 phone calls made to the SPD by Appellant and he confirmed that the indictment contained 21 days where Appellant made the most phone calls to the SPD. (Trial Tr., 265). He related that Appellant even tried to call the SPD collect on the day that he was taken into custody. (Trial Tr., 266). He testified that he also listened to Appellant's phone calls at the Jefferson County Jail and identified Appellant's voice from those calls as the same voice in the 7,347 phone calls. (Trial Tr., 267). He also related that Appellant referenced the indictment charges in his jail phone call. (Trial Tr., 267). Detective Mannarino confirmed that the telephones seized

from Appellant at the time of his arrest had the same phone numbers as those calling into the SPD. (Trial Tr., 267).

{¶19} Detective Mannarino testified that letters sent to various SPD police officers from Appellant from the Jefferson County Jail used the same type of language used in the phone calls to the SPD. (Trial Tr., 288-289). He noted that a letter presented as an exhibit at trial was signed on the bottom with Appellant's full name. (Trial Tr., 289).

{¶20} At the end of the trial on August 14, 2024, the court found Appellant guilty on all counts. (Trial Tr., 115-117). The court sentenced Appellant to a total of 4.5 years in prison. The court imposed 1.5 years in prison on Counts 2, 6, and 7, to run consecutively to one another. The court imposed 5 years of community control on Counts 1, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and Count 21, all to run concurrently with one another and concurrently to the prison sentence. (Trial Tr., 345-346). The court credited Appellant with 531 days in custody, as well as future custody days waiting for transportation to the institution.

{¶21} On August 26, 2024, Appellant filed a timely notice of appeal. He asserts the following sole assignment of error:

**THE TRIAL COURT ERRED IN ALLOWING A CONVICTION DESPITE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.**

{¶22} Appellant asserts that his counsel should have been alerted to the need for a competency hearing and a NGRI defense based on the sheer number and content of the 7,347 calls made to the SPD, as well as his history of similar phone calls to Massachusetts, Indiana, and the Jefferson County Sheriff's Office. Appellant cites R.C. 2945.37 through R.C. 2945.40 for the court procedures for determining competency. He submits that he clearly has mental health issues and no trial strategy existed for failing to request a competency evaluation or pleading NGRI. He asserts he was prejudiced by these failures as he was deprived of his only defense.

{¶23} Appellee responds that trial counsel was not ineffective because Appellant was able to communicate with counsel and no indicia of incompetence was demonstrated. Appellee cites caselaw providing that failure to request a competency evaluation or insanity defense is not per se ineffective assistance of counsel. Appellee

notes that Appellant filed his own articulable motions in court, wrote letters to the court that were understandable, articulably waived his right to a jury trial, and made comments before and after the trial which indicated that he was competent and sane.

## LAW AND ANALYSIS

{¶24} A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If one prong of the *Strickland* test fails, the Court need not consider the other. *State v. Madrigal*, 2000-Ohio-448, ¶ 15.

{¶25} To show deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), citing *Strickland* at 687-689. Our review is highly deferential to counsel's decisions because of the strong presumption that counsel's conduct fell within the wide range of what would be considered reasonable professional assistance. *Id.* There are "countless ways to provide effective assistance in any given case." *Id.* To show resulting prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶26} A defendant is deemed incompetent when he is "incapable of understanding the nature and objective of the proceedings against" him or he is incapable of assisting in his defense. R.C. 2945.37(G). Thus, competency concerns "a defendant's mental condition at the time of trial or plea." *State v. Edwards*, 2023-Ohio-4173, ¶ 11 (12th Dist.), citing *State v. Walker*, 2023-Ohio-140, ¶ 20 (6th Dist.).

{¶27} A defendant is presumed competent to stand trial. *State v. Lawson*, 2021-Ohio-3566, ¶ 48. A trial court is not required to raise the issue of a defendant's competence where counsel has not raised the issue or complained about the defendant's inability to assist in his defense, or if the defendant shows no irrational conduct at trial. *See State v. Cunningham,* 2024-Ohio-1739, ¶ 48 (11th Dist.), citing *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999) and *State v. Williams*, 2003-Ohio-4164, ¶ 63. Further, defense counsel is not per se ineffective for failing to request a competency evaluation or failing

to assert an insanity defense. *Edwards*, 2023-Ohio-4173, at ¶ 11 (12th Dist.), citing *State v. Brewer*, 2021-Ohio-2289, ¶ 12 (12th Dist.).

**{¶28}** R.C. 2945.37(B) provides that if the issue of a defendant's competence is raised before trial, the court must hold a competency hearing. It further states that if the issue is raised after trial has begun, the court must hold a competency hearing only if good cause is shown or on the court's own motion. R.C. 2945.37(B).

**{¶29}** A defendant has a constitutional right to a competency hearing "where the record contains 'sufficient indicia of incompetence'" that warrants inquiry into the defendant's competence. *Cunningham*, 2024-Ohio-1739, at ¶ 46 (11th Dist.), quoting *State v. Berry*, 1995-Ohio-310, ¶ 6. Convicting a legally incompetent defendant violates the Due Process Clause of the United States Constitution and Ohio law. *Lawson*, 2021-Ohio-3566, at ¶ 46, quoting *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (citing *Bishop v. United States*, 350 U.S. 961 (1956)).

**{¶30}** NGRI is an affirmative defense where the defense must prove that at the time of the offense, the defendant "did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." *Edwards*, 2023-Ohio-4173, at ¶ 12 (12th Dist.), quoting R.C. 2901.01(A)(14) and 2901.05(A). Defense counsel renders ineffective assistance where the facts of a case demonstrate that a NGRI would have had a reasonable probability of success. *Id.* at ¶ 13, citing *Walker*, 2023-Ohio-140, at ¶ 30 (6th Dist.).

**{¶31}** Here, neither Appellant's counsel nor the trial court raised the issue of Appellant's incompetency or insanity. Thus, no hearing was held and no competency or sanity determination was made.

**{¶32}** We thus review whether the facts and circumstances showed sufficient indicia of incompetency such that counsel should have raised the issue. In doing so, we look at the record as a whole to determine whether evidence exists that presents a reasonable question whether the defendant did not understand the nature and objective of the proceedings and was unable to assist in his defense. *State v. Mills*, 2023-Ohio-4716, ¶ 28-29. We also review the facts and circumstances to determine if a reasonable probability existed that counsel would have succeeded on a NGRI defense. *Brewer*, 2021-Ohio-2289, at ¶ 12 (12th Dist.).

{¶33} Appellant relies solely on the nature of the crime itself. He cites the sheer number of phone calls he made to the SPD and the obnoxious and offensive content of the statements he spewed at the SPD dispatchers.

{¶34} Appellant's behavior is undoubtedly bizarre. He made 7,341 lewd and offensive phone calls to the SPD over two months. He also has a history of inundating other agencies with such phone calls.

{¶35} However, the nature of the crime itself does not warrant a finding that a competency hearing was warranted or that a reasonable probability existed of a successful NGRI defense. Appellant points to no caselaw holding that the nature of a crime itself warrants a competency hearing or insanity defense.

{¶36} Further, the record here shows no indicia of incompetency or insanity and it shows that Appellant appeared competent and knew that his actions were wrong. For example, Appellant filed a pro se motion to dismiss his case based on a First Amendment violation and he also challenged the arrest warrant. He cited relevant Ohio statutes and amendments to the United States Constitution and presented coherent and cogent arguments. Appellant also filed a letter to the trial court on August 21, 2023 coherently and cogently requesting copies of his search warrant.

{¶37} The transcript of proceedings also shows no evidence that Appellant was incapable of understanding the proceedings or aiding in his defense. Nor did it show indications that an insanity defense was warranted or would have been successful.

{¶38} The court interacted with Appellant before trial when Appellant wished to waive his right to a jury trial and try his case to the court. (Trial Tr., 5-9). Appellant's counsel related that Appellant approached him on the day of trial to discuss withdrawing his jury demand and trying his case to the court. (Trial Tr., 6). Appellant informed the court that he knew what he was doing by waiving his right to a jury trial. (Trial Tr., 6-7). Appellant signed the waiver document in open court in front of his counsel, the court, and the prosecution. (Trial Tr., 7-8). The record of this proceeding showed no indication of Appellant's inability to understand the proceedings or aid in his own defense. Nor was there any indication that an insanity defense would reasonably have been successful. In fact, the prosecution, defense counsel, and the trial court were all present and there was

Case No. 24 JE 0016

no indication by any that Appellant was unable to understand the proceedings or aid in his defense.

**{¶39}** In addition, the transcript of the sentencing hearing shows that Appellant understood the proceedings, could aid in his defense, and knew right from wrong at the time of the offenses. He apologized to Dispatchers Chociej, Mastriani, and Hines. (Trial Tr., 333). He stated, "I got this very wrong and I'm sorry." (Trial Tr., 333). He stated that in 2002, he had a drug addiction, but for the most part he had stayed crime-free. (Trial Tr., 333). He stated that he would not be calling anymore and apologized "for the time I wasted here with something that could have been stopped sooner." (Trial Tr. 334). Stating that he would not call anymore and apologizing shows that Appellant knew right from wrong. Moreover, conveying that he could have stopped sooner also indicates that Appellant knew right from wrong.

**{¶40}** In addition, the trial court was in the best position to observe Appellant and stated at the sentencing hearing that Appellant seemed "to be an extremely bright person." (Trial Tr., 348). The court further stated, "you seem to be way brighter than what we're used to dealing with. I'm hoping you're bright enough to catch on to what's happening here." (Trial Tr., 348). Appellant responded, "I have got the message, sir. I apologize." (Trial Tr., 348).

**{¶41}** Accordingly, we hold that counsel did not deficiently perform by failing to raise an issue about Appellant's incompetency or for failing to raise a NGRI defense. The record shows no indicia of incompetency or that Appellant did not understand the proceedings or could not aid in his defense. Further, the record contains no evidence demonstrating that Appellant could not distinguish right from wrong or know right from wrong at the time of the offenses. In fact, the record shows to the contrary.

**{¶42}** Accordingly, we find that Appellant's sole assignment of error lacks merit and is overruled.

Robb, P.J., concurs.
Dickey, J., concurs.

Case No. 24 JE 0016

[Cite as *State v. Hall*, **2025-Ohio-1308.**]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**