[Cite as *State v. Walker*, 2023-Ohio-140.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICTW
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.  L-22-1032
                                                                      L-22-1033

        Appellee                        Trial Court No.  CR0202101997
                                                                 CR0202101835
v.

Skyler Walker                                    **DECISION AND JUDGMENT**

        Appellant                        Decided:  January 18, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney,
Brenda J. Madjalani and Lorrie J. Rendle, Assistant
Prosecuting Attorneys, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**MAYLE, J.**

## I.      Introduction

**{¶ 1}** In these consolidated appeals, the defendant-appellant, Skyler Walker, pled

guilty pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162

(1970) and was convicted of abducting and feloniously assaulting his girlfriend.  The

Lucas County Court of Common Pleas sentenced Walker to serve a consecutive sentence,

totaling a minimum of eight and one-half (8.5) years to a maximum of eleven and one-

half (11.5) years in prison.   On appeal, Walker alleges that the trial court failed to make the requisite findings to support the imposition of consecutive sentences and that he received ineffective assistance of counsel.  As set forth below, we affirm.

## II.   Background

{¶ 2} Walker was indicted in two separate cases, both involving the same victim, and the cases were heard together.

{¶ 3} In case No. CR-21-1835, the state alleged that Walker assaulted his girlfriend, B.C., and held her captive for several days.  After her escape, B.C. was treated at a hospital for a brain bleed.  On June 10, 2021, Walker was indicted on charges of felonious assault with a repeat violent offender specification and abduction.  At his arraignment, Walker was appointed counsel and pled not guilty.  He was released on bond and ordered to wear an electronic monitor and to have no contact with B.C.

{¶ 4} While out on bond, Walker removed his transmitter and absconded.  He then assaulted B.C. again, this time causing her permanent physical, neurological, and psychological injuries.  On July 7, 2021, Walker was indicted on a second charge of felonious assault (case No. CR-21-1997).  Walker was appointed the same counsel as the first case and pled not guilty.

{¶ 5} Trial was set for November 29, 2021.  On that date, the parties entered into an agreement whereby Walker entered a guilty plea, pursuant to *North Carolina v. Alford.*  In case No. CR-21-1835, Walker pled to abduction, in violation of R.C. 2905.02(A)(2) and (C), a felony of the third degree (Count 2), and the state agreed not to

2.

prosecute the felonious assault charge and its repeat violent offender specification. In case No. CR-21-1997, Walker pled to the sole count in the indictment, felonious assault, in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree. After hearing the state's evidence in each case, the trial court accepted the plea, entered findings of guilt and ordered a presentence investigation ("PSI") in preparation for sentencing. Soon after the hearing, defense counsel filed a motion requesting a "general Psychological Evaluation" at the Court Diagnostic and Treatment Center. Counsel indicated that Walker's family had "informed" him that Walker "was in counseling as [a] youth and that he [had been] diagnosed with Bi-Polar disorder, [severe] depression, chemical imbalance, and [severe] anxiety." The trial court granted the motion.

{¶ 6} The sentencing hearing was held on January 20, 2022, during which the court heard from Walker and his counsel, as well as the victim who asked that Walker receive the maximum sentence. The court also reviewed a victim impact statement, letters from both affected families, the PSI, and a December 29, 2021 report from Dr. Wynkoop at the Court Diagnostic and Treatment Center. At the conclusion of the hearing, the court sentenced Walker to serve 30 months in prison for the abduction offense and an indefinite term of a minimum of six years to a maximum of nine years for the felonious assault offense. The court ordered that the terms be served consecutively to one another, for a total sentence of a minimum of eight and one-half (8.5) years to a maximum of eleven and one-half (11.5) years in prison. Walker appealed and raises two assignments of error for our review:

3.

<u>First Assignment of Error</u>: The trial court did not make the proper findings pursuant to R.C. 2929.14(C), prior to imposing a consecutive sentence.

<u>Second Assignment of Error</u>: Appellant received ineffective assistance of Counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Ohio Constitution.

### III. Analysis

**A. The trial court made all required findings before imposing consecutive sentences.**

{¶ 7} In his first assignment of error, Walker argues that the trial court failed to make "the proper findings" before imposing consecutive sentences.

{¶ 8} We review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶ 9}** First, Walker argues that the trial court was "not required" to impose consecutive sentences. Indeed, R.C. 2929.14(C)(4) plainly states that, "[i]f multiple prison terms are imposed on an offender for convictions of multiple offenses, the court *may* require the offender to serve the prison terms consecutively," provided it finds that the statutory criteria are met. (Emphasis added.). Accordingly, "[a] trial court has discretion to impose consecutive sentences." *State v. Peoples,* 10th Dist. Franklin Nos. 21AP-45, 21AP-46, 2022-Ohio-953, ¶ 57.

**{¶ 10}** When a trial court exercises that discretion under R.C. 2929.14(C)(4) and imposes multiple prison terms for convictions of multiple offenses, it must make certain statutory findings before requiring those convictions to be served consecutively. That is, a trial court may require the offender to serve the prison terms consecutively if it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and if it also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the

multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 11} In other words, to impose consecutive sentences, the court must find that (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and that (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *State v. Beasley*, 158 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252; *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26. Moreover, "a trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis in original.) *Id.* at ¶ 253, citing *Bonnell* at ¶ 37. While "a word-for-word recitation of the language of the statute is not required," a reviewing court must be able to discern that the trial court engaged in the correct analysis and the record must contain evidence to support the trial court's findings. *Bonnell* at ¶ 29.

{¶ 12} Here, the trial court made all of the required findings under R.C. 2929.14(C)(4) when it ordered that the sentences be served consecutively. It said,

6.

Now this court is ordering that those sentences be served consecutive with one another, and I'm finding that consecutive sentences are necessary, both to protect the public in light of the prior history of this defendant, which I have recounted, as well as to punish him for his conduct, and the permanent injuries inflicted upon the victim. I'm finding that consecutive sentences are not disproportionate to the seriousness of his conduct, as well as the danger that he poses to the public.

I'm further finding that these two multiple offenses were committed as part of a course of conduct that was continuing, that the harm caused by these two offenses was so great and unusual that no single sentence would adequately reflect the seriousness of his conduct and the trauma inflicted on the victim.

Further I find that his criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by this defendant. (1/20/2022 Tr. at 18-19).

{¶ 13} Thus, although the court was only required to find that one of the factors set forth in Section (C)(4)(a) though (c) applied, it found that two were applicable, specifically, Subsections (b) and (c). The trial court's findings are also reflected in the February 16, 2022 sentencing entries.

{¶ 14} Moreover, although the sentencing court "has no obligation to state reasons to support its findings," it did so in this case. *Bonnell* at syllabus; *see also Kubat* at ¶ 33.

7.

Thus, with respect to the necessity of protecting the public or punishing the offender, the court found that Walker is a "dangerous person on the streets of any community" who should be "punish[ed] * * * for his conduct." With respect to proportionality, the court found that "this is one of the *most severe* beatings that [it has] encountered in recent years," which caused the victim to suffer "long-term, permanent injuries" including "a permanent neurological deficit." (Emphasis added.) The court added that the victim had to "learn to re-walk, to speak clearly, [and] to eat again." With regard to its finding under R.C. 2929.14(C)(4)(b), the court recounted that "you beat the hell out of this woman *on two separate occasions*," causing a "brain bleed" in the first case and "two subdural hematomas; * * * fractured ribs; ocular deviation as to one of her eyes; blood clots; [and] lacerations." (Emphasis added.) It also confirmed that Walker's assault caused the victim to miscarry. With regard to the court's finding under Section (C)(4)(c), it reviewed Walker's criminal record to find a "a strong history of violent conduct * * * starting at the age of 13," including "multiple gun-related offenses, but also multiple offenses of violence." The court identified each offense, in detail, during the hearing.

{¶ 15} Notably, although Walker claims that the court failed to "make[] the proper findings," he fails to describe what exactly the trial court failed to do. And, based upon our review, we reach the opposite conclusion. As set forth above, we find that the trial court made all factual findings required by R.C. 2929.14(C)(4).

{¶ 16} "[O]nce the trial court makes the factual findings required by [the statute] an appellate court may overturn the imposition of consecutive sentences only if it finds,

8.

clearly and convincingly, that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law." *Id.* at ¶ 60.

{¶ 17} Walker concedes that his sentence is not contrary to law. And, although he repeats several of the same arguments that he made at sentencing—i.e., Walker blames his criminal behavior on his "well documented" mental illness, insisting that he is in need of "beneficial mental healthcare treatment," and claiming that the likelihood of receiving such treatment in prison is "nil"—he makes no effort to articulate (let alone demonstrate by clear and convincing evidence) why the record does not support the any of the R.C. 2929.14(C)(4) factors.

{¶ 18} We therefore find Walker's first assignment of error not well-taken.

### B. Walker received effective assistance of counsel.

{¶ 19} To establish ineffective assistance, Walker must show (1) deficient performance, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. Trial counsel is strongly presumed to have rendered adequate assistance. *Id.*

{¶ 20} In his second assignment of error, Walker claims that his trial counsel was ineffective for failing to file a motion for a competency evaluation and for failing to enter a plea of not guilty by reason of insanity ("NGRI"). Competency refers to a defendant's

9.

mental condition at the time of trial, whereas the insanity defense refers to the defendant's mental condition at the time of the offense. *See, generally,* Oh. Prac. Crim. L. § 54:1 (3d ed.) ("Not only is the point in time different, but the policy issues raised by the insanity defense differ substantially from those raised by an accused's competency to stand trial. Insanity concerns a defendant's culpability for his criminal acts; it is a substantive criminal law issue. In contrast, mental competency involves a due process issue."). We begin with Walker's claim that his trial counsel was ineffective for failing to raise his competency to stand trial.

{¶ 21} R.C. 2945.37 sets forth the process that a defendant is due when an issue is raised pertaining to his competency. R.C. 2945.37(B) entitles the defense to a pretrial competency hearing upon request: "In a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court *shall* hold a hearing on the issue as provided in this section." (Emphasis added.) A defendant is rebuttably presumed to be competent to stand trial. *State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 56, citing R.C. 2945.37(G).

{¶ 22} The test for determining legal competency is "whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Lawson,* 165 Ohio St.3d 445, 2021-Ohio-3566, 179

N.E.3d 1216, ¶ 49 quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). But, defense counsel is not ineffective for failing to request that the trial court order a competency evaluation or hold a competency hearing when the defendant does not display sufficient indicia of incompetency to warrant a competency hearing. *Id.* at ¶ 95, citing *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 41 ("[E]ffective counsel would not request an evaluation unless they had some reason to doubt the defendant's competence."). A defendant who claims ineffective assistance of trial counsel on direct appeal must show from the record that the elements of the claim exist. *Id.* "Therefore, [Walker] must show that his counsel failed to perform an adequate investigation of his possible incompetence." *Id.* at ¶ 101, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 244.

{¶ 23} Here, Walker points to no "indicia of incompetency," other than his "mental health issues," specifically his "bipolar disorder." But, "[a] trial court may not find a defendant incompetent to stand trial or plead guilty solely because he suffers from a mental illness or a learning or intellectual disability." (Citation omitted.) *State v. Garber,* 6th Dist. Sandusky No. S-21-018, 2022-Ohio-3770, ¶ 12. A defendant suffering from an emotional, mental, or learning disability "may still possess the ability to understand the charges and proceedings against him or her and be able to assist in his or her defense." *Id.* "The test for competency focuses entirely on the defendant's ability to understand the meaning of the proceedings against him and his ability to assist in his own defense, which can be satisfied regardless of the defendant's mental status or IQ." *Id.* In

11.

other words, Walker's bipolar disorder, without more, did not trigger a duty by defense counsel to request a competency exam. Further, according to the record, defense counsel did not even know about Walker's mental health history until *after* the plea had been entered, when he was advised of it by Walker's family. Counsel responded by filing a motion for a psychological evaluation, which the court granted. We find that counsel's actions were reasonable under the circumstances.

{¶ 24} Moreover, Walker points to no evidence from the record to even arguably suggest that he was incapable of understanding the nature of the proceedings or to assist in his defense. And, upon our review, we find the very opposite to be true. That is, the record establishes that Walker was not only able to, he actually did participate in his own defense.

{¶ 25} For example, at a September 30, 2021 pretrial, Walker told the court that he "want[ed] all the evidence on the table," specifically the "toxicology report" which, he claimed, would show that the victim was highly intoxicated at the time of the alleged assault(s) and also the "inaccuracy of * * * her statements." Walker also asserted his intention not to waive his right to a speedy trial, and he expressed concern that the filing of unnecessary motions by his trial counsel might "stall" the process and delay him from his "three kids [at home]." Walker then instructed his counsel "on the record" to file "no motions * * * unless it's a motion [for] dismissal due to lack of evidence." Walker added that, while he might not have a law license, he did have "common sense." Walker's comments indicate a rational, informed thought process.

12.

{¶ 26} Likewise, at the November 29, 2021 change-of-plea hearing, Walker confirmed that he was "clear-headed" and then engaged with the court, providing appropriate answers to the court's questions during the plea colloquy. "Solemn declarations in open court carry a strong presumption of verity." *Lawson* at ¶ 62 quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Finally, the record contains no countervailing evidence—nothing to suggest that Walker's ability to understand the proceedings or assist his counsel was hampered. The absence of any "outrageous, irrational or confused" behavior further contradicts Walker's claim of incompetence. *Lawson* ¶ 61, citing *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180. Given the absence of any "indicia of incompetence," we find that Walker has failed to show that trial counsel's performance was deficient for failing to request a competency exam.

{¶ 27} Similarly, Walker fails to show prejudice resulting from trial counsel's failure to request a competency exam before entering a plea. To show prejudice, Walker must show that there is a reasonable probability that an evaluation "would have revealed that he was incompetent to stand trial." *Lawson* at ¶ 104, citing *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir.1988). Here, Walker fails to present any such evidence, including any opinion from Dr. Wynkoop—who evaluated him after, but in close proximity to, the plea hearing. It is reasonable to conclude that Dr. Wynkoop explored the issue of Walker's competency. *See, e.g., State v. Davenport*, 8th Dist. Cuyahoga No. 106143, 2018-Ohio-2933, ¶ 28. Given the absence of an opinion from Dr. Wynkoop that

13.

Walker was incompetent, as well as the absence of any other indicia, we conclude that Walker has failed to show a reasonable probability that, if counsel had requested a competency evaluation before he entered his plea, it would have supported a claim of incompetence. Accordingly, Walker's competency argument also fails under the prejudice prong of *Strickland.*

{¶ 28} Finally, we turn to Walker's argument that his counsel was deficient for failing to enter an NGRI plea on his behalf.

{¶ 29} "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves [by a preponderance of the evidence] that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14).

{¶ 30} Where facts and circumstances indicate that an NGRI plea would have had a reasonable probability of success, it is ineffective assistance of counsel to fail to enter the plea. (Citation omitted.) *State v. Anaya*, 6th Dist. Lucas No. L-06-1375, 2008-Ohio-1853, ¶ 29. Where, however, facts indicate that counsel was pursuing a reasonable strategy in not so pleading, or where the likelihood of success for the plea is low, the decision is not unreasonable. *Id.,* citing *State v. Twyman,* 2d Dist. Montgomery No. 19086, 2002-Ohio-3558 (defendant had mental health disorder but no reasonable probability he would have been acquitted by reason of insanity); *State v. Martin,* 12th Dist. Warren Nos. CA2003-06-065, CA2003-06-066, 2004-Ohio-702 (same); *State v. Robinson,* 6th Dist. No. L-03-1307, 2005-Ohio-5266, ¶ 33 (psychological evaluations and

14.

defendant's testimony showed counsel's decision not to seek insanity defendant was reasonable).

{¶ 31} Here, Walker argues that trial counsel should have entered an NGRI plea because counsel was aware that he committed "inexplicably violent" offenses while he was "off his [mental health] medication" and "doing street drugs."

{¶ 32} Walker's intoxication and drug use is not enough to demonstrate that he failed to recognize the wrongfulness of his actions. *See State v. Gilmore*, 8th Dist. Cuyahoga No. 103479, 2016-Ohio-4697, ¶ 10 (the defendant knew the wrongfulness of her actions even though the defendant "admitted to being a daily cocaine abuser" and "also admitted to smoking the drug K2 prior to committing the offense"). Walker's voluntary consumption and abuse of drugs "neither excuses his heinous crime nor supports his argument that an NGRI plea would have been successful." *Davenport* at ¶ 35.

{¶ 33} Moreover, while the record establishes that Walker had long-standing mental health problems, it does not show that he was unable to understand the difference between right and wrong. It is not enough that Walker had been diagnosed with a mental health condition. Rather, he must demonstrate that his mental defect somehow caused him to be unaware that it was wrong to feloniously assault and abduct the victim. *State v. May*, 1st Dist. Hamilton No. C-070290, 2008-Ohio-1731, ¶ 7. In this case, there is simply no evidence to that effect.

15.

{¶ 34} Conversely, there *is* evidence that Walker understood the wrongfulness of his actions, including the fact that he turned himself over to the police (in the first case) and took steps to conceal his crimes by holding the victim hostage and denying her medical care (in both cases). *Accord Davenport* at ¶ 32; *State v. Myers,* 10th Dist. Franklin No. 09AP-926, 2010-Ohio-4602, ¶ 17. Walker's actions indicate an understanding of wrongfulness, and accordingly, he cannot show that his counsel was deficient for failing to enter an NGRI plea. *State v. Martinez,* 8th Dist. Cuyahoga No. 101474, 2015-Ohio-1293, ¶ 22.

{¶ 35} Additionally, Walker cannot show prejudice because there is no evidence in the record—including any opinion from Dr. Wynkoop—that, if counsel had pursued an NGRI plea, that he would have been found not guilty. "The failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial." *Id.* at ¶ 23.

{¶ 36} Because an NGRI plea did not have a reasonable probability of success, trial counsel's failure to pursue an NGRI plea was reasonable and did not constitute ineffective assistance of counsel.

{¶ 37} For all these reasons, Walker's second assignment of error is found not well-taken.

### V. Conclusion

{¶ 38} The first assignment of error is not well-taken because the trial court made the proper findings under R.C. 2929.14(C)(4) to impose consecutive sentences.

16.

{¶ 39} The second assignment of error is not well-taken because counsel was not ineffective for failing to seek a competency evaluation or for failing to enter an NGRI plea where there was no evidence that Walker was incompetent to stand trial or insane at the time of the offenses.

{¶ 40} Accordingly, the February 16, 2022 judgments of the Lucas County Court of Common Pleas are affirmed. Pursuant to App.R. 24, Walker is ordered to pay the costs of the appeal. It is so ordered.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                  _____

JUDGE

Christine E. Mayle, J.               

_____

JUDGE

Myron C. Duhart, P.J.                
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.