[Cite as *State v. Arnold*, 2025-Ohio-2547.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

    Appellee

v.

Jeffrey Arnold

    Appellant

Court of Appeals No. {87}WD-24-059

Trial Court No. 2023CR0468

**<u>DECISION AND JUDGMENT</u>**

Decided: July 18, 2025

* * * * *

Paul A. Dobson, Esq., Prosecutor and
David T. Harold, Esq., Assistant Prosecutor, for appellee.

Gene P. Murray, for appellant.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} This matter is before the court on appeal from the judgment of the Wood County Common Pleas Court, sentencing appellant, Jeffrey Arnold, to an aggregate prison term of 60 months following his guilty plea. Finding no error, we affirm.

## II. Facts and Procedural Background

{¶ 2} In July 2023, the state charged appellant in case No. 2023CR335 with violating a protection order in violation of R.C. 2919.27(A)(1) and (B)(3)(c), a felony of the fifth degree. The state alleged that appellant recklessly violated the terms of a protection order on June 19, 2023, after previously being convicted of violating a protection order in a prior case. While in custody on that case, appellant's actions against employees of the Wood County Justice Center, between August 5 and September 11, 2023, led to a 32-count indictment in the present case, alleging offenses that included 22 counts of aggravated menacing, misdemeanors of the first degree; four counts of obstructing official business, felonies of the fifth degree; three counts of intimidation, felonies of the third degree; two counts of assault, felonies of the fifth degree; and one count of harassment with a bodily substance, a felony of the fifth degree. The assault and harassment offenses constituted felonies based on the location of the offenses and status of the victims, the offenses having occurred in a correctional facility against facility employees.

{¶ 3} Appellant was arraigned on the charges, entered a not guilty plea, and on September 27, 2023, the trial court referred appellant to the Northwest Ohio Psychiatric Hospital for a competency evaluation, pursuant to R.C. 2945.371.[1] On December 11,

---

[1] Appellant takes issue with the fact that his trial counsel entered pleas of Not Guilty on his behalf to all 32 charges in the indictment and the trial court, "ironically enough…on its own volition entered pleas of Not Guilty for the defendant who was found incompetent and was about to be transported to the Northwest Ohio Psychiatric Hospital

2.

2023, the trial court held a competency hearing and, based on the stipulated competency evaluation report submitted to the court, determined appellant was not competent to stand trial at present, with a substantial probability that appellant could be restored to competency with treatment. The trial court ordered appellant to undergo treatment and continued the matter for treatment. On January 25, 2024, the trial court entered an order authorizing medication and treatment, after appellant refused medications and treatment.

{¶ 4} On March 19, 2024, the trial court entered an order on competency, based on the stipulated report indicating appellant had been restored to competency, and reactivated proceedings in the case. On May 14, 2024, the trial court scheduled the matter for a change of plea hearing at appellant's request.

{¶ 5} On May 21, 2024, appellant appeared for a plea hearing that was combined with a hearing to address modification to his bond. Appellant entered a guilty plea as to three counts in the 32-count indictment, as follows: (1) Count 14: assault in violation of R.C. 2903.13(A) and (C)(4)(a), a felony of the fifth degree; (2) Count 27: intimidation in violation of R.C. 2921.03(A) and (B), a felony of the third degree; and (3) Count 31: harassment with a bodily substance in violation of R.C. 2921.38(A) and (D), a felony of

---

by Court order." While appellant suggests error in this procedure, he has assigned and pursued no error in this appeal regarding his initial plea of Not Guilty. Furthermore, Crim.R. 11(A) requires the trial court to "enter a plea of not guilty on behalf of the defendant" even if the plea is against the defendant's wishes. *State v. Khamsi,* 2020-Ohio-1472, ¶ 36 (1st Dist.). Finally, appellant subsequently entered a guilty plea, with no attempt to withdraw that plea, and has waived all non-jurisdictional defects occurring prior to the guilty plea. (Citations omitted) *State v. Hesser,* 2025-Ohio-775, ¶ 6 (6th Dist.).

3.

the fifth degree. Pursuant to the negotiated plea, the state agreed to dismiss the indictment in case No. 2023CR335, as well as the remaining 29 counts in the present case.

{¶ 6} As part of the plea colloquy, appellant acknowledged the maximum penalty that could include a prison term, including a consecutive sentence. Appellant also acknowledged that he could receive a community control sanction, but the trial court was not promising a community control sanction. The trial court specifically addressed the bond modification to be addressed that would permit appellant's release on bond, and clarified that the plea hearing was unrelated to release on bond, as follows:

> The Court: Now, I want to make sure something is understood, Mr. Arnold. I think sometimes we do these pleas and it sometimes seems that things are connected. The conditions of bond and the release on bond is a separate consideration. I don't want you to be entering this plea saying, hey, if I plead, I'm going to get out. That is not connected to this. Do you understand that?
> [Appellant]: Yes, Your Honor.

The trial court conducted the Crim.R. 11 colloquy, addressing the constitutional rights appellant waived by entering his guilty plea, and appellant expressed understanding of the effect of his plea and his desire to proceed.

{¶ 7} The trial court accepted appellant's plea and found appellant guilty.

{¶ 8} Next, the trial court addressed bond, vacated the prior bond and ordered appellant released on his own recognizance with conditions, including mental health treatment, no contact with the victims, a GPS monitor, and a curfew. The trial court scheduled sentencing for July 23, 2024.

4.

{¶ 9} Two months later, appellant appeared for his sentencing hearing. Appellant's trial counsel argued in favor of a community control sanction, noting appellant's efforts to address his mental health issues and his willingness to cooperate with treatment, as demonstrated by appellant's compliance with all conditions of his release, pending sentencing. The state argued in favor of a prison sentence, highlighting appellant's long history of violence that often coincided with the manic periods of appellant's bipolar disorder. The state also noted that, despite his mental health history, appellant has never entered a not guilty by reason of insanity plea, but instead, has always argued his mental health issues as a mitigating factor, received probation, and then neglected his mental health.

{¶ 10} Appellant spoke on his own behalf. He indicated that 2023 was a rough year, "probably the worst year of my life." He argued, however, that he has had trouble finding the right medication and a "psychologist that really knows what he's doing." He also argued that his past offenses, like a domestic violence charge, resulted from the victim attacking appellant, and appellant blamed other incidents on others and "people doing things to create conflict." As to the pleaded offenses, appellant contended his conduct resulted from actions taken by the jail and corrections officers and the poor conditions at the jail. However, appellant acknowledged his own fault in not addressing issues in the jail with the court "as far as the whole picture and not just one side of things." Appellant admitted he spit on one officer after the officer "electrocuted" him, noting he used restraint "to not return back you know fighting back when someone has

5.

shot you with something when you get that almost in the heart." Appellant also generally apologized for his actions.

{¶ 11} Despite voicing contrition, appellant also offered excuses or his version of events, disputing the stipulated facts regarding his offenses and disputing information contained in the reports. He indicated he filed numerous ADA grievances, alleged HIPPA violations, and requested contact with the internal affairs division of the sheriff's department but was ignored. While accepting blame and stating the actions of others did not "excuse my fault in things for some of the things that I did," appellant also expressed resentment toward others for placing him in his present situation. The trial court questioned this view, stating, "You're saying to me that none of this would have happened but for the actions of the Wood County Sheriff's Office." Appellant agreed, stating, "The entirety of it isn't my fault. We all have a part of this." Appellant believed the sheriff's office could have worked with him but instead created conflict.

{¶ 12} The trial court also inquired regarding appellant's treatment plan, going forward. Appellant indicated he contacted a doctor, and it would be two more months before he could be seen. Appellant planned to improve his diet and exercise in the meantime. Appellant also stated that, because he now had the right psychologist and marijuana is now legal, things would be different than his 17-year history with the system.

{¶ 13} In imposing sentence, the trial court recognized appellant's mental health struggle, spanning 17 years, including the "dangerous aspects" of appellant's condition.

6.

The trial court noted appellant's criminal record beginning in 2004, with many violent offenses. The trial court stated:

> Throughout the pendency of this case we tried to find numerous ways to try and find a different option for you than to be incarcerated. Each time we were thwarted and couldn't find a place to put you so that you were safe for the community, for yourself, and for others.
>
> Today I came in here, I read through everything. I was not convinced on what I was going to do or not going to do. But, as sometimes happens, statements by the Defendant make it much more clear as to what is necessary to be done in a particular case.
>
> The Defendant makes it very clear that he has no remorse for the actions that were taken. He recognizes that maybe he could have done something different but has a hard time understanding or at least accepting full responsibility.
>
> He has not accepted the implications and extent of his mental illness. I don't see that. In fact, he's been out for two months and decides last week that it's time to get some kind of mental health assessment.
>
> I've seen nothing in all the time that you are willing to comply, consider, or even work with conditions of community control.

{¶ 14} The trial court imposed prison terms of twelve months as to Count 14, 36 months as to Count 27, and twelve months as to Count 31. After addressing the findings under R.C. 2929.14(C)(4), the trial court ordered appellant to serve the sentences consecutively.

{¶ 15} Appellant filed a timely appeal of this judgment.

### III.    Assignments of Error

{¶ 16} In challenging the judgment, appellant asserts the following assignments of error:

1. The indictment contained criminal charges against defendant-appellant in the course and scope of a time frame in which incompetence and

7.

being not guilty by reason of insanity were preclusive issues to criminal responsibility, and were attempts by the state to boilerplate the charges, 32 in all, so that the issues of mental health were ignored in a purposeful effort to achieve plea-bargaining power over the defendant-appellant, thereby denying him the fundamental and substantial rights to due process of law and equal protection of the laws, and thus resulting in plain error.

2. With the state's effort to get the defendant-appellant to otherwise plead out (plead guilty) to three of 32 indicted charges, with the remaining 29 counts to be dismissed at the sentencing hearing, and with the defendant to be released from state custody pending a pre-sentence investigation, … [sic.] it was the effectual and unlawful equivalent of an adhesion contract offer to defendant-appellant, who had previously been transported to and from the county jail to a state psychiatric hospital, and to whom a release from state custody under any circumstances was an offer the defendant-appellant could not and would not refuse, in violating the defendant-appellant's fundamental and substantial rights to due process of law and equal protection of the laws, so resulting in plain error.

3. Defense counsel failed to file not guilty by reason of insanity pleas to the allegations in the numerous criminal charges, to wit, 32 indicted counts, when the defendant-appellant had been found incompetent and had been transported from the county jail and to and from a state psychiatric hospital in the course and scope of the state's prosecution of the pending indicted charges against the defendant-appellant, thereby, constituting ineffective assistance of counsel, in violation of the fundamental and substantial rights under the Sixth and Fourteenth Amendments to the United States Constitution, and under Article I, Section 10 of the Constitution of the state of Ohio.

4. The trial court breached its plea agreement with defendant Arnold, that the defendant would receive community control if he pled guilty to three counts in the indictment, when in fact, at the sentencing hearing, the court sentenced defendant-appellant to five years in prison, thereby breaking the plea agreement and abusing its discretion, violating defendant Arnold's right to due process of law and resulting in plain error.

**{¶ 17}** For ease of discussion, we address the assignments of error out of order.

## IV.     Analysis

{¶ 18} As an initial matter, we note appellant raises constitutional violations within his assignments of error, arguing a due process violation in all assignments of error, an equal protection violation in his first and second assignments of error, and a violation of his right to counsel in his third assignment of error. While appellant articulates an ineffective assistance of counsel argument, he provides little to identify the basis for his claimed due process and equal protection violations. In addition to claimed constitutional violations, appellant argues plain error as to his first, second, and fourth assignments of error.

{¶ 19} In criminal proceedings, "procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right." *State v. Cowan,* 2004-Ohio-4777, ¶ 8, citing *Boddie v. Connecticut,* 401 U.S. 371, 377 (1971). Furthermore, a defendant's opportunity to be heard "must occur at a meaningful time and in a meaningful manner." *Id.,* citing *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976). While "due process" may not be precisely defined, the "phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty.'" (Citation omitted) *In re W.Z.,* 2011-Ohio-3238, ¶ 18 (6th Dist.). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires individuals to be "treated in a manner similar to others in like circumstances." *State v. Gaeth,* 2022-Ohio-2906, ¶ 6 (6th Dist.), citing *McCrone v. Bank One Corp.,*

9.

2005-Ohio-6505, ¶ 6. Ohio's equal protection provision is functionally the same, providing that the government is instituted for the equal protection and benefit of the people. *State v. Burke,* 2016-Ohio-8185, ¶ 16 (2d Dist.), citing Article I, Section 2 of the Ohio Constitution.

{¶ 20} Appellant raised neither a due process nor an equal protection argument in the proceedings in the trial court. "Generally, appellate courts will not consider errors which could have been, but were not, called to the attention of the trial court … including constitutional issues raised for the first time on appeal." *State v. Peterson,* 2023-Ohio-3544, ¶31 (6th Dist.), quoting *State v. Wesley*, 2002-Ohio-5192, ¶ 5 (6th Dist.) (additional citation omitted.). Here, appellant appears to base his argument of violations on his claims of insanity at the time of the offenses but does not otherwise address his argument to matters within the record. Accordingly, we decline to consider new issues or matters outside the record on appeal and limit our analysis accordingly.

{¶ 21} In his first and third assignments of error, appellant raises a potential insanity defense to the offenses charged in the indictment, arguing he could not have legal culpability due to insanity at the time of the offenses, and his trial counsel provided constitutionally ineffective assistance in failing to file a not guilty by reason of insanity (NGRI) plea, pursuant to Crim.R. 11(A). In his second and fourth assignments of error, appellant challenges the knowing, voluntary, and intelligent nature of his guilty plea, arguing the trial court created an "adhesion contract" by procuring a guilty plea in return

10.

for release on his own recognizance pending sentencing and induced appellant to accept the plea by promising a community control sentence.

## A. Appellant's alleged insanity did not preclude indictment.

{¶ 22} Appellant first raises the issue of his culpability at the time of the offenses for which he entered a guilty plea. Appellant appears to characterize the indictment as a sham indictment, containing 32 counts for the purpose of overwhelming a "mentally fragile defendant" and inducing a guilty plea as to three of the counts, and the indictment therefore denied him "the fundamental and substantial rights to due process of law and equal protection of the laws." In support, appellant argues that his incompetent finding during the pendency of the case demonstrated his insanity at the time he committed the offenses.

{¶ 23} Appellant entered a guilty plea to counts 14, 27, and 31 in the indictment and the state agreed to dismiss the remaining charges. In count 14, the state alleged that on or about August 15, 2023, appellant knowingly caused or attempted to cause physical harm to J.M., an employee of the correctional facility while appellant was in custody at the facility. In count 27, the state alleged that on or about September 4, 2023, appellant knowingly and by force, by unlawful threat of harm to a person or property, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, attempted to influence, intimidate, or hinder a public servant in the discharge of the person's duty. In count 31, the state alleged that on or about September 4, 2023, appellant, while confined at a detention facility, with intent to harass,

11.

annoy, threaten, or alarm B.B., an employee at the facility, caused or attempted to cause B.B. to have contact with a bodily substance by throwing or expelling the substance at B.B.

{¶ 24} Despite dismissal of all but three counts in the indictment, appellant challenges all 32 counts based on his mental health condition, suggesting the state could not charge him because of his mental health condition. He further argues that his trial counsel should have filed an NGRI plea based solely on the incompetent finding and the time he spent in the state psychiatric hospital to have his competency restored. In support, appellant cites to no legal authority that precludes indictment of a mentally ill person. Additionally, appellant cites to nothing in the record that demonstrated he lacked the mental culpability to commit the offenses for which he was convicted.

{¶ 25} The concepts of competency and NGRI are separate and distinct. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, criminal defendants have a right not to proceed while incompetent. In contrast, NGRI is an affirmative defense to a criminal charge that may be asserted in states that recognize the defense. As explained by the United States Supreme Court in *Medina v. California,* 505 U.S. 437, 448-449 (1992):

> In a competency hearing, the "emphasis is on [the defendant's] capacity to consult with counsel and to comprehend the proceedings, and ... this is by no means the same test as those which determine criminal responsibility at the time of the crime." ... If a defendant is incompetent, due process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him. ... The entry of a plea

12.

of not guilty by reason of insanity, by contrast, presupposes that the defendant is competent to stand trial and to enter a plea. Moreover, while the Due Process Clause affords an incompetent defendant the right not to be tried, ..., we have not said that the Constitution requires the States to recognize the insanity defense.

(Citations omitted).

{¶ 26} Thus, competency is a matter of due process which bars criminal trial of a defendant lacking capacity to understand the proceedings and participate in the defense, but an NGRI defense is a recognized defense to a criminal charge that places the burden on the defense to prove insanity at the time of the offense by a preponderance of the evidence. *State v. Reynolds,* 2017-Ohio-1478, ¶ 48 (6th Dist.), citing *State v. Hancock,* 2006-Ohio-160, ¶ 35; R.C. 2901.05(A). An NGRI defense is merely an affirmative defense, not required under the United States Constitution. *Medina* at 449; *see also State v. Harris,* 2015-Ohio-166, ¶ 16-17.

{¶ 27} In Ohio, both competency and a plea of NGRI are governed by statute, R.C. 2945.37 through 2945.402, with Crim.R. 11(A) requiring a written plea of NGRI, made "by either the defendant or the defendant's attorney." The evaluations conducted for each, furthermore, assess different matters; competency determinations require an evaluation of "the defendant's present mental condition" and a plea of NGRI requires evaluation of "the defendant's mental condition at the time of the offense charged." R.C. 2945.371(A).

{¶ 28} In this case, appellant was referred for a competency evaluation on September 27, 2023, after arraignment, and was found incompetent but restorable on

13.

December 11, 2023. After receiving treatment, the trial court found appellant restored to competency on March 19, 2024. However, appellant never asserted NGRI as a defense, with assertion "controlled by rule and statute." *Harris* at ¶ 17. Thus, there was no evaluation conducted, relative to appellant's mental condition at the time of commission of any of the offenses. Despite the lack of any NGRI evaluation, however, appellant now argues that his competency determination precluded indictment, and his trial counsel was ineffective in not raising his mental condition at the time of all charges, including those dismissed pursuant to the negotiated guilty plea. Neither the law nor the record supports these arguments.

{¶ 29} Contrary to appellant's argument, a finding of incompetence for purposes of standing trial does not equate to a finding of NGRI or preclude indictment, considering the separate law applicable to each finding. Upon indictment and indicia of incompetence, Ohio law requires evaluations of mental condition and treatment for the purpose of restoring competency, including forced medication, treatment, and even commitment. *See* R.C. 2945.37-2945.39. An NGRI finding, however, begins with assertion of NGRI by written plea, and requires an evaluation of a person's capacity at the time of the offense, with procedure after conviction governed by statute. *See* Crim.R. 11(A) and (H); R.C. 2945.37-2945.371, R.C. 2945.40-2945.401. Simply put, Ohio law designates NGRI as an affirmative defense to indicted charges. *See Harris* at ¶ 17. Therefore, NGRI is a defense that does not prevent the state from charging a person for

14.

criminal conduct, even if that person suffers from a mental illness. We therefore find appellant's first assignment of error not well-taken.

**B. Appellant's trial counsel was not constitutionally ineffective in failing to assert an NGRI plea.**

{¶ 30} Appellant next argues that his trial counsel was ineffective in failing to assert an NGRI defense. Appellant entered a negotiated guilty plea to three charges, and a valid guilty plea waives the right to appeal "all prior nonjurisdictional defects[.]" *State v. Beasley,* 2018-Ohio-16, ¶ 15; *State v. Swazey,* 2023-Ohio-4627, ¶ 28. This waiver includes the right to challenge "deprivation of the constitutional right to counsel" at earlier stages in the proceeding. *See State v. Spates,* 64 Ohio St.3d 269, 273 (1992) (fundamental right to counsel may be waived by entry of guilty plea). After a guilty plea, an appellant may only challenge errors that precluded a valid plea. *State v. Kelley,* 57 Ohio St.3d 127 (1991), paragraph two of the syllabus.

{¶ 31} In this case, appellant does not support any argument regarding the validity of his plea based on his claimed insanity at the time of the offenses, and the record demonstrates appellant was restored to competency at the time he entered his guilty plea to three charges. Instead, appellant argues his trial counsel erred in failing to file an NGRI plea at the initial stages of the proceeding, and as a result, he was denied effective assistance of counsel.

{¶ 32} To establish his claim of ineffective assistance of counsel, appellant must demonstrate "(1) deficient performance of counsel, i.e., performance falling below an

15.

objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Willis,* 2017-Ohio-8924, ¶ 12 (6th Dist.), quoting *State v. Hale,* 2008-Ohio-3426, ¶ 204, citing *Strickland v. Washington,* 466 U.S. 668, 687–688 (1984). We presume appellant's counsel provided competent representation and appellant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *State v. Smith,* 17 Ohio St.3d 98, 100 (1985), quoting *Strickland* at 694-695.

{¶ 33} As previously addressed, an NGRI plea is an affirmative defense, and requires demonstration that "at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). The record supported a finding of incompetence, based on appellant's mental illness, followed by restoration to competency at the time of the plea. There is nothing in the record, however, to demonstrate that appellant did not know the wrongfulness of his acts at the time of the offenses, because of his mental illness. The existence of mental illness, without more, does not demonstrate an inability to comprehend the difference between right and wrong. *State v. Walker,* 2023-Ohio-140, ¶ 33 (6th Dist.).

{¶ 34} At sentencing, appellant addressed his culpability for the offenses, with no suggestion that he was unable to appreciate the wrongfulness of his conduct. Instead, appellant acknowledged the wrongfulness and provided insight into his thought process,

16.

suggesting he made the decision to hold back from committing more egregious conduct and exercised control over his actions.

{¶ 35} "Where facts and circumstances indicate that an NGRI plea would have had a reasonable probability of success, it is ineffective assistance of counsel to fail to enter the plea." *Walker* at ¶ 30, citing *State v. Anaya*, 2008-Ohio-1853, ¶ 29 (6th Dist.). Lacking any evidence in the record that an NGRI plea had a reasonable probability of success, however, the decision not to pursue an NGRI plea does not constitute ineffective assistance of counsel. *Walker* at ¶ 35-36. "The failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial." *Id.* at ¶ 35, citing *State v. Martinez,* 2015-Ohio-1293, ¶ 23 (8th Dist.). Accordingly, we find appellant's third assignment of error not well-taken.

### C. The release pending sentencing was not a term of the plea agreement, and did not create an adhesion contract.

{¶ 36} In his second assignment of error, appellant argues that the trial court's modification of his bond and release, pending sentencing, created "the effectual and unlawful equivalent of an adhesion contract offer" to appellant, and he agreed to enter his plea in return for his release on bond with incarceration the price for his agreement at the end of his "two illusory months of ankle-monitored freedom." Appellant cites to no actual terms of his plea agreement as terms of adhesion but instead refers to release on bond as an enticement to enter into the plea agreement.

17.

{¶ 37} A plea agreement is considered a contract between the state and the defendant and is generally governed by principles of contract law. *State v. Snell,* 2019-Ohio-1033, ¶ 13 (6th Dist.), citing *State v. Sabath,* 2009-Ohio-5726, ¶ 12 (6th Dist.) (additional citation omitted.). The written plea agreement, in this case, contains the following:

> I will plead guilty to Counts Fourteen, (14), Twenty Seven (27), and Thirty One (31) of the Thirty Two (32) Count Indictment. The remaining Twenty-Nine (29) Counts in the Indictment will be dismissed at sentencing. Further, the sole Count in Indictment 23-CR-0335 will be dismissed.

Pertinent to this appeal, the written agreement contained no mention of release on bond, but instead contained a disclaimer of additional terms, stating, "No promises have been made to me as to the sentence to be imposed by the Court and further no other promises have been made to me except as a part of the plea agreement."

{¶ 38} At his plea hearing, the trial court addressed the written agreement with appellant, and appellant acknowledged he understood the written terms. The trial court also specifically addressed the timing of the bond modification, coinciding with the plea, and ensured appellant knew that bond modification was not conditioned on appellant entering the plea. The trial court also made no promises regarding sentence. While noting no mandatory prison sentence and the presumption for community control, the trial court also indicated it had not reviewed a presentence investigation report, adding, "between now and the sentencing, anything can happen. So those are things that the Court can take into consideration in regard to sentencing."

18.

{¶ 39} Appellant indicated understanding, on the record, that a community control sanction was only a possibility. Appellant also acknowledged that he entered the plea voluntarily, without any threat or promise inducing his decision. In his appeal, however, he argues that his release on bond pending sentencing was inducement for his plea, and, therefore, constituted an adhesion contract.

{¶ 40} "An adhesion contract is a type of contract in which one party has most if not all of the bargaining power and uses its superior bargaining position to impose its terms on the weaker party." *Worldwide Asset Purchasing, LLC v. Easterling,* 2009-Ohio-6196, ¶ 7, fn 1 (10th Dist.), citing *Winters v. Hart,* 2005-Ohio-3367, ¶ 11 (6th Dist.); Black's Law Dictionary, 342 (8th Ed.1999). Here, appellant does not clearly identify the adhesive "terms" imposed by the written plea agreement, arguing instead that he was forced to enter into the agreement and accept a prison term in return for two months of release, pending sentencing. This argument lacks any support in the record.

{¶ 41} While the timing of appellant's release on bond coincided with his plea, the trial court emphasized that bond modification and appellant's agreement to enter a plea were not part of the same transaction. The trial court, furthermore, indicated no decision had been made concerning sentence, and the trial court requested a presentence investigation and required appellant to comply with the terms of his bond.

{¶ 42} At sentencing, the trial court had the presentence investigation report and heard from appellant, who spoke at length about the shared culpability of the victims of his offenses. In deciding to impose a prison sanction for each offense, the trial court noted

19.

appellant's lack of remorse, his difficulty in accepting responsibility for his actions, and his failure to accept the implications of his mental illness, noting appellant waited until the last week of his release to seek any mental health treatment. Based on appellant's extensive criminal history and his current actions, the trial court determined appellant would not be "willing to comply, consider, or even work with conditions of community control." Thus, contrary to appellant's argument, a prison sentence was not part of the plea agreement in exchange for release pending sentencing, but a sentence imposed by the trial court after consideration of appropriate factors. Therefore, we find appellant's second assignment of error not well-taken.

**D. The trial court did not breach any plea agreement with appellant.**

{¶ 43} In his fourth and final assignment of error, appellant argues, in the alternative, that the trial court breached its plea agreement with appellant. Specifically, appellant argues that the trial court promised a community control sanction in return for his guilty plea, conditioned on his compliance with the terms of his bond pending sentencing, but imposed a prison term instead after appellant had complied with all terms of release between his plea and sentencing hearing. Appellant's reference to the record, however, demonstrates the trial court remained undecided regarding the sentence it would impose at the time of appellant's plea, stating a community control sanction was a "possibility" but the trial court needed to review the presentence investigation report as part of the "things that the Court can take into consideration in regard to sentencing."

20.

**{¶ 44}** The record contains no promise by the trial court regarding a potential sentence. Furthermore, as previously noted, the plea agreement is a contract between the state and the defendant. *Snell,* 2019-Ohio-1033, at ¶ 13, citing *Sabath,* 2009-Ohio-5726, at ¶ 12. Appellant cites nothing, within the plea agreement or at the plea hearing, demonstrating a promise made by the trial court to secure the plea, and the written agreement and appellant's own representations on the record at hearing demonstrate no promises outside those contained within the plea agreement. We therefore find appellant's fourth assignment of error not well-taken.

### V. Conclusion

**{¶ 45}** Finding substantial justice has been done, we affirm the judgment of the Wood County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See, also,* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Gene A. Zmuda, J. | [[Applied Signature]] |
| | JUDGE |
| Myron C. Duhart, J. | [[Applied Signature 2]] |
| | JUDGE |
| Charles E. Sulek, P.J. | [[Applied Signature 3]] |
| CONCUR | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.