[Cite as *State v. Henderson*, 2026-Ohio-1020.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. {72}S-24-017 |
| | {72}S-24-019 |
| Appellee | {72}S-24-020 |
| | |
| | Trial Court No. 22 CR 0821 |
| | 24 CR 0557 |
| v. | 24 CR 0409 |
| | |
| Vincent Henderson | **DECISION AND JUDGMENT** |
| | |
| Appellant | Decided: March 24, 2026 |

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Laura E. Alkire, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} Appellant, Vincent Henderson, appeals the August 29, 2025 judgment of the

Sandusky County Court of Common Pleas convicting him of one count of conveyance of

drugs of abuse onto the grounds of a specified governmental facility and two counts of

possession of drugs and sentencing him to a 36-month prison term. For the reasons that follow, the trial court's judgment is affirmed.

## II. Facts and Procedural History

{¶ 2} On September 12, 2022, appellant was indicted by a grand jury in the Sandusky County Court of Common Pleas on one count of trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(f), a first-degree felony (count 1); one count of possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(e), a first-degree felony (count 2); one count of illegal conveyance of drugs of abuse onto grounds of a detention facility in violation of R.C. 2921.36(A)(2) and (G)(2), a third-degree felony (count 3); one count of possession of drugs in violation of R.C. 2925.11(A)and (C)(11)(a), a fifth-degree felony (count 4); and one count of possession of drugs in violation of R.C. 2925.11(A) and (C)(4)(a), a fifth-degree felony (count 5).

{¶ 3} The charges stemmed from two incidents on the morning of January 6, 2022 in Fremont, Ohio. As appellant was leaving a Circle K convenience store, he was stopped in the store's parking lot by Officer Christian Ortolani of the Fremont Police Department, who believed appellant had an outstanding warrant for his arrest. After discovering that no such warrant existed, Ortolani permitted appellant to leave. Because appellant did not have a valid driver's license, he left the vehicle he had driven to the Circle K—a Chevrolet Malibu—and walked away. The Malibu appellant left in the Circle K parking lot was owned by a friend of appellant's, and the friend later consented

2.

to a search of the vehicle. Upon searching the vehicle, the police discovered a backpack containing drugs.

{¶ 4} Approximately 10 to 20 minutes later, Ortolani conducted a traffic stop of an SUV leaving the Double A Motel, which was located across the street from the Circle K. Appellant was a passenger in that vehicle. The owner of the vehicle consented to a search of the vehicle, and appellant was arrested on a charge of obstruction while the vehicle was being searched. Appellant was then transported to the Sandusky County Jail, where jail staff discovered a bag of drugs in appellant's clothing.

{¶ 5} Appellant pled not guilty to the charges in the indictment and moved to suppress the evidence discovered during the search of the backpack. The trial court granted the motion and the State's subsequent motion to dismiss counts 1 and 2 of the indictment.

{¶ 6} The case proceeded to a jury trial on counts 3, 4, and 5 of the indictment, all of which stemmed from the drugs discovered at the Sandusky County Jail. At the trial, the following witnesses testified: Officer Ortolani; Bryant Keaton and Katherine Shreffler, who both were working as corrections officers at the Sandusky County Jail when appellant was brought there; and Samuel Fortener, an analyst with BCI. The testimony is as follows.

*Testimony of Christian Ortolani*

{¶ 7} Ortolani testified about both of his encounters with appellant on the morning of January 6, 2022. The first encounter occurred when Ortolani detained appellant

3.

outside the Circle K because he believed appellant had an outstanding warrant. Appellant did not consent to a search of his person or the Chevy Malibu appellant had been driving, but Ortolani conducted a Terry pat down of appellant. After discovering that appellant did not have an outstanding warrant, appellant was permitted to leave. Appellant locked the Malibu and walked away.

{¶ 8} The second encounter occurred about 10 to 20 minutes after the first incident. Ortolani testified that the motel across the street from the Circle K, the Double A Motel, was known to police as a place where drug activity frequently occurred, so Ortolani regularly patrolled the lot. He testified that he patrolled the Double A Motel's lot shortly after his first encounter with appellant, though he also testified that he did not know that appellant had walked to the Double A Motel. As Ortolani was patrolling the Double A Motel's lot, he noticed a Chevy Avalanche driving out of the lot with no license plate visible, so Ortolani initiated a traffic stop. The driver of the Avalanche pulled into the Circle K parking lot.

{¶ 9} Although the state proffered, and the court admitted, two body cam videos that had been redacted to omit hearsay statements, appellant proffered, and the court admitted, the two complete unredacted body cam videos of the stop. Those body cam videos were recorded by Ortolani's body cam and an officer whom Ortolani was training that day, Officer Dorian Bulger. In the body cam videos, Ortolani is seen approaching the Avalanche's passenger side and Officer Bulger approaching the driver's side. The vehicle had three occupants: a driver, a front passenger, and appellant, who was in the

4.

rear passenger seat. Ortolani asked each occupant to come out of the vehicle one at a time.

{¶ 10} Ortolani was familiar with the driver, who had a drug history. The driver consented to a search of his person and his vehicle, complied with all police instructions, and answered Ortolani's questions. The driver explained that he was at the motel picking up a friend, the front-seat passenger, to go to breakfast, when appellant unexpectedly jumped into the car. The driver knew appellant and agreed to give him a ride.

{¶ 11} The front passenger also consented to a search of his person and complied with all police directions. Although the front passenger had a warrant for his arrest, Ortolani testified that the front passenger was outside the area where he could be picked up on that warrant.

{¶ 12} Finally, the police instructed appellant to exit the vehicle. Appellant did so, but he almost immediately began arguing with the police, complaining that the police had just detained him minutes before stopping the Avalanche. As appellant exited the Avalanche, a bag of a white powder was visible on the vehicle's floor between the rear passenger seat where appellant had been sitting and the rear passenger door. When appellant asked what he did, Ortolani referred to the bag as a "bag of coke," and appellant began repeatedly yelling, "What bag of coke?" Ortolani patted appellant down for weapons and attempted to handcuff him, but appellant refused to put his hands behind his back to be handcuffed and argued with the officers. Soon after that, Officer Ortolani told

5.

appellant he was under arrest for obstruction of official business for interfering with the search of the vehicle.

{¶ 13} During the encounter, at least two other police officers appeared at the Circle K parking lot to offer assistance to Ortolani and Bulger. Several police officers attempted to search appellant in the parking lot following his arrest, but they had difficulty conducting the search. Appellant was wearing jeans that hung below his waist. Under the jeans, appellant wore a pair of blue pants, the upper portion of which was visible. Appellant wore a red garment under the blue pants that was also visible. Appellant appeared to be more compliant with a search of his right side. When police began to search his left side, appellant began loudly crying, complaining about the position of his arm. One of the officers asked him to please stop moving but he did not. Despite appellant's resistance to a search of his person, police officers were able to retrieve items from at least some of appellant's pockets. No drugs were located on appellant's person during the search.

{¶ 14} In the meantime, police conducted a search of the Avalanche. In addition to the bag of white powder visible on the floor of the vehicle between the passenger rear seat and door, police found a container of what appeared to be marijuana near the center console of the vehicle. No one was charged with possession of either substance found during the search of the Avalanche.

{¶ 15} Following his search, appellant was put into a police vehicle, and Bulger and Ortolani transported him to Sandusky County Jail. The state presented body cam

6.

video of appellant's arrival at the jail. Upon arrival at the jail, appellant was warned that bringing drugs into the jail would result in an additional charge. Ortolani informed the corrections officer who came to take custody of appellant that they had not been able to conduct a thorough search of appellant at the time of his arrest.

{¶ 16} Ortolani was notified by a corrections officer that a bag of pills and powder was found in appellant's clothing during the jail's search of appellant. Ortolani brought the bag back to the police station where he photographed it, and that photograph was admitted into evidence. The photograph shows several small translucent bags inside of another translucent bag. The small bags appear to contain different colors of substances. No ruler or other object is in the photo to indicate the size of the bag. Ortolani testified that State's Exhibit 6, a bag containing a brown powder, was one of the smaller bags inside the larger bag found by the Sandusky County Jail in appellant's clothing. The bags were sent to BCI for analysis.

{¶ 17} During his testimony, Ortolani explained why he did not find any drugs during his encounters with appellant. He said that during his first encounter with appellant that morning, at the Circle K parking lot when appellant was driving the Malibu, Ortolani only did a pat-down for weapons and did not search inside appellant's pockets. Ortolani also noted that appellant's demeanor changed between the first and second encounters. In the first encounter, appellant was compliant with the police. In the second encounter, though police attempted to search appellant's pockets following his arrest, appellant was combative and police were unable to conduct a thorough search.

7.

Ortolani pointed out that between those encounters, appellant had gone across the street to the area surrounding the Double A Motel, a location known for drug activity.

{¶ 18} On cross-examination, appellant questioned Detective Ortolani about the Fremont Police Department's two incident reports and the reference numbers for the evidence collected. Notably, although Ortolani testified in conjunction with these documents, appellant did not move to admit them into evidence. Ortolani first answered questions about the incident report's references to the bag of white powder found next to the passenger rear seat of the Avalanche and the bag of marijuana found near the Avalanche's center console. Ortolani was able to identify the evidence numbers for both items on the incident report, and he testified that the bag of white powder was sent to BCI for analysis though the marijuana was not. Ortolani was similarly cross-examined about the reference numbers used in the Fremont Police Department incident report for the substances found at the Sandusky County Jail. The testimony is as follows:

> Q. Okay. And with regards to the items that were allegedly found at the county jail --
>
> A. Okay.
>
> Q. -- those were marked as evidence?
>
> A. The items seized from the jail were seized, packaged and placed in evidence at the Fremont Police Department, yes.
>
> Q. Okay. You did not discover -- you did not discover --
>
> A. The initial findings, I did not initially find them, no, sir.
>
> Q. So you have no knowledge of where or when they might have been found?
>
> A. They were found while the Defendant was in the jail where --

8.

Q. You were told that?

A. Yes, sir.

Q. Okay. And what number on the list do you believe was that item?

A. Well, with that, there would be multiple numbers.

Q. All right. But which one -- which number is the substance that you believe was tested that was allegedly discovered at the county jail and is the basis for the conveyance charge here?

A. Okay, yes, um ... evidence No. 2, I believe is what would have been for this specific conveyance charge.

{¶ 19} Next, Ortolani was also cross-examined about the handling of the substances collected at the Sandusky County Jail. He testified that he bagged the substances as evidence and that he knew he had done so because his initials were on the seal. He also testified that he had taken the picture of the item at the police department. Finally, he explained that he put the evidence into a locker that only one Fremont Police Department employee, Meredith Niederkohr, has access to, and that Niederkohr would have labeled the evidence with a number beginning with AW as well as the number used in the report, and then sent the evidence to BCI for analysis. Ortolani then explained how the reference numbers in the BCI lab report matched up with the evidence numbers used by the Fremont Police in the incident reports.

### Testimony of Bryant Keaton

{¶ 20} Bryant Keaton was working as a sergeant at the Sandusky County Jail at the time of appellant's arrest. He testified about the booking process through which the

9.

jail processed new inmates, explaining that jail staff search new inmates by first patting them down, then doing a body scan, and finally searching the inmates' street clothes while they are changing into jail-provided uniforms.

{¶ 21} Keaton could not remember who specifically searched appellant on January 6, 2022, but he remembered that appellant was "moving around" while they attempted to pat him down. He also remembered looking at an area of concern on appellant's body scan because another corrections officer believed that it indicated appellant may have something in his pocket. He testified in conjunction with the body scan image, pointing out a darker area on the body scan that corresponded with appellant's left side near where a pants pocket might be. Keaton testified that another corrections officer, Katherine Shreffler, searched appellant's street clothing after he changed out of them, and she found a bag containing several smaller bags of pills in a pocket of appellant's street clothes. Keaton was present when the bag was handed over to the Fremont Police.

{¶ 22} On cross-examination, Keaton testified that although the jail had cameras in parts of the booking area, they did not have cameras in the area where the body scanner was located or where inmates changed their clothing.

***Testimony of Katherine Shreffler***

{¶ 23} Katherine Shreffler, another corrections officer working at the Sandusky County Jail on January 6, 2022, also testified. She began by describing appellant as agitated, stating that he was speaking over the officers as they tried to book him. She also testified that she did not remember whether she was involved in taking off the outer

10.

layer of appellant's clothing, but she did search appellant's street clothes. She testified that in the left pocket of appellant's blue pants, which she described as pajama pants, she found a bag that she thought "may have been the size of a sandwich baggie," though she could not say for certain. Inside that bag were seven smaller bags, and the smaller bags contained unknown substances. After documenting the bag for the jail's records, she gave the bag to Officer Bulger.

{¶ 24} On cross-examination, Shreffler explained that she did not have access to video footage of the booking area, so she did not bring any videos though the subpoena for her testimony requested that she do so.

### Testimony of Samuel Fortener

{¶ 25} Samuel Fortner, a BCI analyst testified regarding the substances found in the bags in appellant's clothing at the Sandusky County Jail. He said that according to lab results, a report of which was admitted into evidence, the seized substances included cocaine and a fentanyl-like substance.

{¶ 26} Appellant did not testify on his own behalf, though he did recall Officer Ortolani to authenticate the complete body cam videos, as discussed above. Appellant then noted that he had inadvertently failed to move for acquittal pursuant to Crim.R. 29 following the close of the State's case-in-chief and requested that he make his motion for acquittal at that time, which the trial court permitted. Appellant argued that because the State had not proven beyond a reasonable doubt all of the essential elements of the

11.

offenses and that "there are issues about the evidence," the trial court should grant his motion for acquittal. The court denied the motion.

{¶ 27} Following deliberations, the jury found appellant guilty of counts 3, 4, and 5. At the State's request, the trial court dismissed counts 1 and 2. The court sentenced appellant to a 36-month prison term for count 3, a 9-month prison term for count 4, and a 9-month prison term for count 5, to be served concurrently.

### III. Assignments of Error

{¶ 28} On appeal, appellant asserts the following assignments of error for our review:

1. The trial court abused its discretion when it denied appellant's Crim.R. 29 motion for acquittal.

2. Appellant's convictions for illegal conveyance and possession of drugs of abuse were not supported by the manifest weight of the evidence.

3. The trial court committed plain error by failing to merge appellant's convictions for illegal conveyance and possession of drugs at the time of sentencing.

4. Appellant received ineffective assistance of counsel when trial counsel failed to get appellant's exhibits admitted, after discussing them on the record.

### IV. Law and Analysis

### 1. Appellant's Crim.R. 29 Motion for Acquittal

{¶ 29} In his first assignment of error, appellant contends that the trial court abused its discretion in denying his Crim.R. 29 motion for acquittal. Appellant's arguments in support of this assignment of error boil down to a contention that the

12.

evidence the State used to prove he conveyed drugs into the Sandusky County Jail—the testimony that the bag of drugs was found in his pocket—was not credible due to the size of the bag. Appellant claims that the outer bag "appears to be about the width of appellant's leg," though he concedes that the exhibit depicting the bag contains no ruler or other frame of reference to indicate its size. Appellant first argues that the size of the bag was inconsistent with the area flagged in the body scan, which he characterizes as a "small dark mark." He also points out that he was searched by officers twice before undergoing the body scan, and he contends that it is quite unlikely that an item as wide as his leg would have been missed in both prior searches. Finally, he contends that the bag of drugs was too large to fit into any standard pocket and therefore would not have fit into the pocket of his pajama pants.

{¶ 30} "The standard of review for a denial of a Crim.R. 29 motion is the same as the standard of review for sufficiency of the evidence." *State v. Faulkner*, 2023-Ohio-971, ¶ 23 (6th Dist.), quoting *State v. Johnson*, 2014-Ohio-2435, ¶ 11 (6th Dist.). "Sufficiency is a test of adequacy, or whether, after considering the evidence most favorably for the prosecution, a rational trier of fact could have found that the state proved all essential elements of an offense beyond a reasonable doubt." *State v. Fisher*, 2024-Ohio-5520, ¶ 41 (6th Dist.), citing *State v. Harris*, 2024-Ohio-4722, ¶ 15 (6th Dist.), quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1987). "In making that determination, we do not weigh the evidence or assess the credibility of the witnesses."

13.

*State v. Gillen*, 2025-Ohio-1095, ¶ 48 (6th Dist.), citing *State v. Were*, 2008-Ohio-2762, ¶ 132.

{¶ 31} Because appellant's assignment of error challenges the trial court's denial of his Crim.R. 29 motion for acquittal, it tests the sufficiency of the evidence, not the weight of the evidence. Here, appellant's contentions about the size of the bag are an attack on the credibility of the testimony of the corrections officer who testified that she found the bag in appellant's pants pocket. Because we cannot weigh credibility in a sufficiency challenge, appellant's arguments attacking the credibility of the state's witnesses are misplaced. The State presented the testimony of the two corrections officers to establish that a search of appellant's clothing in the jail turned up a bag of pills, Ortolani's testimony that he took possession of the pills and sent them to BCI for testing, and the testimony of a BCI analyst that the pills contained a fentanyl-like substance and cocaine. Accordingly, the State presented sufficient evidence, if believed, to support the trial court's denial of his Crim.R. 29 motion.

{¶ 32} Appellant's first assignment of error is not well-taken.

**2. Manifest Weight**

{¶ 33} In his next assignment of error, appellant alleges that his convictions for illegal conveyance and possession were against the manifest weight of the evidence. In support, appellant makes the same arguments—the State's evidence is not credible—as those in support of his first assignment of error. He contends that it defies belief that the police could have searched him so many times before he entered the jail and failed to turn

14.

up a bag containing seven other bags of pills and that the image on the body scan does not match up with the size of the bag of pills.

{¶ 34} In considering whether a conviction is against the manifest weight of the evidence, we "must determine in view of the entire record 'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Knuff*, 2024-Ohio-902, ¶ 207, quoting *State v. Group*, 2002-Ohio-7247, ¶ 77, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "In reviewing a verdict against the manifest weight of the evidence, we give deference to the trial court's credibility determinations." *State v. Costilla*, 2024-Ohio-3221, ¶ 46 (6th Dist.), citing *Toledo v. Manning*, 2019-Ohio-3405, ¶ 41 (6th Dist.).

{¶ 35} Here, appellant's arguments are all premised on the size of the bag found in his pajama pants. Notably, although the State's exhibit with the image of the bag contains nothing to indicate the bag's size, one of the smaller bags contained in the outer bag was presented at trial and admitted into evidence. The jury, therefore, had the opportunity to consider the bag's size as well as the body scan image, which was also admitted into evidence.

{¶ 36} Further, the State explained why the bag was not located during the police's interactions with appellant that morning before he was brought to the jail. During appellant's first encounter with police, which occurred while he was getting into the Chevy Malibu to leave the Circle K, Ortolani testified that he only conducted a pat-

15.

down to locate weapons—not drugs—and did not search inside appellant's pockets. That testimony was corroborated by footage from Ortolani's body camera taken during the encounter. During appellant's second encounter, which occurred after the traffic stop of the Avalanche, police did search appellant in conjunction with his arrest. However, Ortolani testified that appellant was wearing several layers of clothing and he was not cooperative with their search, and therefore their search was not thorough enough. Indeed, as Ortolani transferred custody of appellant to the Sandusky County Jail, he told the corrections officer that he had been unable to conduct a thorough search of appellant at the scene. This is likewise corroborated by the police body cam videos.

{¶ 37} Finally, the State pointed out that between appellant's first and second encounters with the police that morning, appellant was in the vicinity of a motel where drug activity is known to take place. Even if appellant did not have the drugs in his pocket during his first encounter with police, he could have obtained the drugs before his second encounter.

{¶ 38} Considering the record, we do not find that the jury lost its way in finding that appellant possessed the bag of drugs and conveyed that bag into the Sandusky County Jail. The police provided credible explanations for why the bag was not found in prior interactions with appellant, and appellant has not demonstrated that the bag's size was inconsistent with the body scan image.

{¶ 39} Appellant's second assignment of error is not well-taken.

16.

### 3. Merger

**{¶ 40}** In support of his third assignment of error, appellant claims that for purposes of sentencing, the trial court should have merged his convictions for possession and conveyance because he could not convey drugs without possessing them.

**{¶ 41}** Because the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution prohibits a defendant from being subjected to multiple punishments for the same offense, some offenses must be merged at sentencing. *State v. Gibler*, 2025-Ohio-4689, ¶ 8 (6th Dist.). To that end, R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." In contrast, where the conduct "results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each," the state may charge a defendant for all offenses "and the defendant may be convicted of all of them." R.C. 2941.25(B).

**{¶ 42}** Because appellant did not raise the issue of merger in the trial court, our review is limited to plain error. *State v. Hoffman*, 2025-Ohio-4609, ¶ 14 (6th Dist.), citing *State v. Bailey*, 2022-Ohio-4407, ¶ 7, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 28 ("the failure to raise the allied offense issue at the time of sentencing forfeits all but plain error"). Plain error is only reversible if "it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Hair*, 2023-Ohio-2422, ¶ 66 (6th Dist.), quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 3

{¶ 43} Here, appellant's convictions would only merge for sentencing if he had the same animus in both possessing the drugs at the time of his arrest for obstruction and when he conveyed the drugs into the prison. Ohio courts, including this one, that have previously considered this issue have determined that the offenses were committed with a separate animus. In *State v. Kendall*, 2021-Ohio-1551, ¶ 87 (6th Dist.), we explained as follows:

> [A]ppellant knowingly possessed the methamphetamine at the time of his arrest. During intake, appellant was given the opportunity to disclose the drugs, but did not do so, and knowingly brought the drugs with him into [the corrections center]. Therefore, we find that the offenses of aggravated possession and illegal conveyance were committed separately, and with separate animus or motivation, and should not be merged.

*See also State v. Griffin*, 2020-Ohio-2936, ¶ 22 (5th Dist.) ("Appellant's animus in possessing the drugs during the traffic stop is different than his animus in conveying the drugs into the jail."); *State v. Deckard*, 2017-Ohio-8469, ¶ 52 (4th Dist.) ("[T]he trial court viewed the possession conduct as separate conduct having occurred prior to the offense of illegally conveying them into the jail…. [and] we find this reasoning to be correct.").

{¶ 44} In *State v. Evans*, 2023-Ohio-1357, ¶ 23 (5th Dist.), the appellant made an identical argument to appellant's argument in this case. The Fifth District held that the offenses did not merge, explaining as follows:

> Evans was charged with a violation of R.C. 2925.11, Aggravated Possession of Drugs which states that "[N]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Evans concedes that she did possess a controlled substance and it is evident

18.

from the facts of the case that she committed this offense long before she was escorted to the county jail and read the sign prohibiting the conveyance of illegal substances into the jail. She had only committed one offense up until the time that she entered the detention facility. When Evans entered the detention facility with the drugs in her possession, she violated R.C. 2921.36 when she "knowingly convey[ed] … onto the grounds of a detention facility … a drug of abuse …. While it is true that she could not commit the second offense without committing the first, it is also clear that these offenses were committed separately by the different conduct of Evans. She committed the violation of R.C. 2925.11 by possessing the drugs and the violation of R.C. 2921.36 by the conveyance of the drugs. We find that the offenses were committed separately and that Evans does not argue, and the record does not reflect, plain error.

{¶ 45} Here, just as in *Evans*, appellant possessed the drugs before his encounter with police at the traffic stop of the Avalanche. At that time, he had only committed possession, not conveyance. While appellant is correct that he could not convey the drugs into the Sandusky County Jail without first possessing them, he had the opportunity to disclose his possession of the drugs before entering the jail and he elected to retain possession of them, thus committing an additional offense, conveyance. His animus in possessing the drugs prior to arrest is different than his animus in remaining silent about the presence of the drugs on his person upon entering the jail. Accordingly, the trial court did not commit plain error in failing to merge the offenses for sentencing.

{¶ 46} Appellant's third assignment of error is not well-taken.

### 4. Ineffective Assistance of Counsel

{¶ 47} In support of his last assignment of error, appellant claims that his trial counsel was ineffective because he failed to seek admission of a police report, marked as defendant's exhibit A; a detailed incident report, marked as defendant's exhibit B; and a

second incident report, marked as defendant's exhibit C.  Appellant claims these were all discussed at trial and marked for admission, but appellant's counsel never actually moved to admit them.  Appellant further contends that if the jury had been provided with copies of these exhibits, their verdict would have been different.  He does not explain why the admission of these exhibits would have resulted in a different verdict.

{¶ 48} To establish his claim of ineffective assistance of counsel, appellant must demonstrate "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Arnold*, 2025-Ohio-2547, ¶ 32 (6th Dist.), quoting *State v. Willis*, 2017-Ohio-8924, ¶ 12 (6th Dist.), quoting *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).  We presume appellant's counsel provided competent representation and appellant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *State v. Smith*, 17 Ohio St.3d 98, 100 (1985), quoting *Strickland* at 694-695.

{¶ 49} Here, in support of the first prong, appellant claims that the failure to seek the admission of exhibits that "were discussed at trial [and] labeled for admission" falls below an objective standard of reasonable representation.  Our review of the record reflects that the exhibits were discussed during Officer Ortolani's testimony, they were marked as defendant's exhibits A, B, and C, and appellant's counsel did not move for

20.

their admission. As to the second prong, prejudice, appellant makes the conclusory statement, without any reasoning to support the statement, that "this court should find that it's hard to imagine a scenario where the result would not have been different [] had the exhibits been admitted."

{¶ 50} App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Here, appellant has failed to provide the reasons in support of his contention that his trial counsel's failure to seek the documents' admission falls below an objective standard of reasonable representation and that the jury's verdict would have been different if these three exhibits had been admitted. The primary issue with his arguments under both prongs is that appellant has utterly failed to explain why these documents are significant to the jury's verdict. At trial, appellant's counsel used the documents to cross-examine Ortolani about the reference numbers used by the Fremont Police Department to identify evidence in the reports and compared those references with those used in the BCI lab report. At no point was appellant's counsel able to establish any inconsistencies in the references. But even if appellant, on appeal, believes that these documents establish that there were inconsistencies or deficiencies in the Fremont Police Department's handling of the evidence, he must actually make that argument in his brief. As an appellate court, we cannot make a party's arguments for him. "[W]e cannot write a party's brief, pronounce

21.

ourselves convinced by it, and so rule in the party's favor. That's not how an adversarial system of adjudication works." *State v. Sims*, 2023-Ohio-1179, ¶ 109 (4th Dist.), quoting *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir. 2013).

{¶ 51} And even if we were able to speculate about what appellant may have hoped to accomplish with the admission of these documents, appellant still cannot establish ineffective assistance of counsel. In another case in which the appellant claimed that there were discrepancies between the police report and the police testimony at trial, the Eleventh District held that although the trial court abused its discretion in denying the appellant's motion to admit the police report, any error was harmless. *State v. Williams*, 2006-Ohio-6689, ¶ 23-25 (11th Dist.). The court pointed out that the appellant cross-examined the testifying officers about the discrepancies in the report, so "the jury was certainly made aware of those discrepancies," and "[o]nly the jury could weigh the effect of this discrepancy between the narrative and the arresting officers' testimony." *Id.* at ¶ 25. Here, even if we could assume that appellant's argument is that the references to the evidence were inconsistent between the reports, the jury heard appellant cross-examine Ortolani at length about the reports. And even if appellant's counsel had identified a discrepancy, "[o]nly the jury could weigh the effect of this discrepancy between the narrative and the arresting officers' testimony." *Id*. Just as this would be harmless error if the trial court had refused to admit the reports, the failure of appellant's counsel to seek their admission did not change the outcome of the trial.

{¶ 52} Accordingly, appellant's fourth assignment of error is not well-taken.

22.

## V. Conclusion

**{¶ 53}** Appellant's assignments of error are found not well-taken.  We affirm the August 29, 2025 judgment of the Sandusky County Court of Common Pleas.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.           

             _____
                        JUDGE

Gene A. Zmuda, J.          


Myron C. Duhart, J.           
CONCUR.

             _____
                        JUDGE


             _____
                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.